OPINION *Page 2 
{¶ 1} Defendant-Appellant Hyme Urbina ("Urbina") appeals the May 2, 2006 Judgment Entry of the Court of Common Pleas of Defiance County, Ohio sentencing him to 17 months for Trafficking in Crack Cocaine, in violation of R.C. 2925.03(A) and (C)(4)(c), a felony of the fourth degree, and to four years for Trafficking in Crack Cocaine, in violation of R.C. 2925.03(A) and (C)(4)(c), a felony of the third degree. The trial court ordered these sentences to be served consecutively for a total of five years and five months.[1]
 {¶ 2} This matter stems from two controlled drug purchases that occurred in March of 2004. Both purchases were arranged by an informant, Nicole Hill ("Hill"). Before each purchase Hill would meet with Lieutenant Ryan Baird ("Baird") of the Williams County Sheriffs Office, who was working with the Multi Area Narcotics Task Force at the time. These meetings would occur in Hill's apartment. Before each transaction, Baird issued Hill money that had been photocopied with which to make the drug purchase, and Hill was fitted with a recording device.
 {¶ 3} The first drug buy occurred on March 10, 2004. Hill arranged to *Page 3 
purchase crack cocaine from a man she knew as Jimmy Jamz, who was later identified as Hyme Urbina. Hill was told to meet Urbina at a gas station within walking distance of her apartment. When Hill arrived, on foot at the gas station, Urbina was waiting for her in a car. Urbina was in the driver's seat and Hill got into the passenger side of the car.
 {¶ 4} They then drove to a house where Urbina went to get a crack pipe. While they were driving around, Urbina handed Hill a tin and instructed her to take out what she wanted. After taking out the crack cocaine, Hill paid Urbina three hundred dollars, approximately one hundred dollars a gram. While Urbina went into the house to retrieve the crack pipe, Hill waited in the car.
 {¶ 5} When Urbina returned to the car, he had the crack pipe. He then smoked some of the crack cocaine that he had sold to Hill. After Urbina smoked the crack cocaine, he returned Hill to the gas station where she had originally been picked up.
 {¶ 6} Hill returned to her apartment. Once back at her apartment, Hill gave the crack cocaine she had purchased to Baird. The crack cocaine was contained in two little clear plastic wrappers wrapped in tinfoil. Hill testified at trial that Urbina typically sold crack cocaine for one hundred dollars a gram. It is unclear from the testimony adduced at trial whether she had originally purchased three plastic wrappers of cocaine and if one had been consumed when Urbina *Page 4 
smoked crack cocaine in the car. However, laboratory reports were introduced indicating that 1.92g of crack cocaine was contained in the two plastic wrapped packages purchased on March 10, 2004.
 {¶ 7} The second buy occurred on March 18, 2004. Hill was again meeting with Urbina. This time Urbina instructed Hill to meet him in the parking lot of her apartment complex and to bring a Char-Boy[2] with her. Urbina was waiting for her outside her apartment in a truck. Hill got in the back seat of the truck behind Urbina. An unidentified male was in the driver's seat.
 {¶ 8} When Hill got in the car, she informed Urbina that she wanted to purchase four grams of cocaine, or four rocks. Urbina stated that he only had two, which he gave to Hill. She paid him two hundred dollars and exited the truck.
 {¶ 9} Prior to the March 18, 2004 purchase, Hill had been issued five hundred dollars to make the purchase. When she returned to her apartment, she returned the three hundred dollars she had not used to Baird. She also gave him the two small plastic wrapped pouches of crack cocaine she had purchased. The laboratory report introduced at trial indicated that these pouches contained 1.51 grams of crack cocaine. *Page 5 
 {¶ 10} With respect to the March 18, 2004 transaction, testimony was introduced at trial that the drug purchased occurred within 1000 feet of Anthony Wayne School. Defiance County Engineer, Warren Schlatter testified that the school was well within a 1000 foot radius of Hill's apartment.
 {¶ 11} The identity of "Jimmy Jamz" was also resolved at trial. Hill identified Urbina as the person she knew as Jimmy Jamz. Hill stated that Urbina went by the name Jimmy Jamz, and had the name "Jamz" tattooed on his neck. Hill stated that she had noticed the tattoo on both occasions, when purchasing drugs from Urbina. Urbina testified that he had previously used the name Jimmy Jamz when he was younger and worked as a DJ.
 {¶ 12} On July 6, 2004 a Defiance County grand jury issued a Five Count Indictment for the following charges: Count One — Trafficking in Marijuana in violation of R.C. 2925.03(A)(C)(3)(c); Count Two — Trafficking in Crack Cocaine in violation of R.C.2925.03(A)(C)(4)(a); Count Three — Trafficking in Cocaine in violation of R.C. 2925.03(A)(C)(4)(d); Count Four — Trafficking in Crack Cocaine in violation of R.C. 2925.03(A)(C)(4)(c); and Count Five-Trafficking in Crack Cocaine in violation of R.C. 2925.03(A)(C)(4)(c). Both Counts Four and Five contained additional language stating that "HYME URBINA did, within 1000 feet of a school, knowingly, sell or offer to sell Crack *Page 6 
Cocaine. . ." This additional language elevates both of these Counts to felonies of the third degree.[3]
 {¶ 13} Urbina was arraigned on July 21, 2004 and pled not guilty to all charges.
 {¶ 14} On October 11, 2005 on what the trial court terms a motion by the State, Counts One, Two, and Three were dismissed. A written motion from the State is not included in the record, and the reason for the dismissal is unclear. However, it appears that for the purposes of the jury trial, Counts Four and Five became Counts One and Two, respectively.
 {¶ 15} A one day jury trial was held on October 13, 2005. The jury reached a verdict of guilty on both counts. The jury was also asked to consider whether the State had proven that both counts took place within 1000 feet of a school. The jury found that Count One had not been proven to have occurred within 1000 feet of a school, but that Count Two had. *Page 7 
 {¶ 16} On May 2, 2006 Urbina was sentenced to 17 months for what was originally Count Four of the indictment, Trafficking in Crack Cocaine, in violation of R.C. 2925.03(A)(C)(4)(c), a felony of the fourth degree and to 4 years for Count Five of the indictment, Trafficking in Crack Cocaine, in violation of R.C. 2925.03(A)(C)(4)(c), a felony of the third degree. The trial court ordered these sentences to be served consecutively for a totally of five years and five months. Urbina was also ordered to pay a mandatory fine in the amount of $5,000 for Count Five, Trafficking in Crack Cocaine, and to pay restitution to the Multi-Area Narcotics Task Force in the amount of $500.
 {¶ 17} Urbina now appeals, asserting four assignments of error.
 ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED WHEN IT ACCEPTED INTO EVIDENCE A LABORATORY REPORT PREPARED IN ACCORDANCE WITH R.C. 2925.51, WITHOUT ALSO REQUIRING THE TESTIMONY OF THE LAB ANALYST WHO MADE THE FINDINGS IN THE REPORT. (T.P. 253). AS HYME URBINA HAD NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY WAIVED HIS RIGHT TO CONFRONT THE LAB ANALYST WHO TESTIFIED THROUGH THE REPORT, THIS VIOLATED MR. URBINA'S SIXTH AMENDMENT RIGHT TO CONFRONTATION.
 ASSIGNMENT OF ERROR II THE TRIAL COURT ERRED WHEN IT RETROACTIVELY APPLIED THE REMEDIAL HOLDING FROM THE OHIO SUPREME COURT DECISION IN STATE V. FOSTER, 109 Ohio St. 3d 1, 2006-Ohio-856, TO HYME URBINA, WHOSE CRIMES OF CONVICTION PREDATED THE FOSTER *Page 8 DECISION. (SENTENCING T.PP. 2-26; JUDGMENT ENTRY FILED MAY 8, 2006). THIS WAS A VIOLATION OF BOTH THE EX POST FACTO AND DUE PROCESS CLAUSES OF THE UNITED STATES CONSITUTION.
 ASSIGNMENT OF ERROR III THE TRIAL COURT ERRED WHEN IT ORDERED HYME URBINA TO PAY A $5,000 FINE AND $500 IN RESTITUTION WITHOUT FIRST CONSIDERING HIS PRESENT OR FUTURE ABILITY TO PAY. (SENTENCING T.PP. 2-26; JUDGMENT ENTRY FILED MAY 8, 2006).
 ASSIGNMENT OF ERROR IV TRIAL COUNSEL WAS INEFFECTIVE, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE 1 OF THE OHIO CONSTITUTION, FOR FAILING TO OBJECT TO REVERSIBLE ERRORS AT TRIAL AND SENTENCING. (T.P. 253; SENTENCING T.PP. 2-26; JUDGMENT ENTRY FILED MAY 8, 2006).
 First Assignment of Error {¶ 18} In his first assignment of error Urbina contends that hisSixth Amendment rights to confrontation were violated when the trial court admitted the report of a laboratory analyst without the analyst's testimony.
 {¶ 19} As a preliminary matter, we note that Urbina's first assignment of error may only be reviewed as plain error because this issue was not raised before the trial court. See State v. Levally, 3rd Dist. No. 14-05-28, 2006-Ohio-1882 citing State v. Comen (1990),50 Ohio St.3d 206, 211, 553 N.E.2d 640. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed *Page 9 
although they were not brought to the attention of the court." State v.Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, 2002-Ohio-68.
 {¶ 20} The Ohio Supreme Court, in Barnes, articulated a three part test for the finding of plain error.
 First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.
Barnes, 94 Ohio St.3d at 27 (internal citations omitted).
 {¶ 21} Thus, "[o]nly extraordinary circumstances and the prevention of a miscarriage of justice warrant a finding of plain error." State v.Brown, 3rd Dist. No. 8-02-09, 2002-Ohio-4755 citing State v. Long
(1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph three of the syllabus. Furthermore, we note that a trial court is provided with broad discretion in admitting evidence. State v.Williams (1982), 7 Ohio App.3d 160, 162, 454 N.E.2d 1334.
 {¶ 22} R.C. 2925.51 allows laboratory reports to be introduced as prima-facie evidence of content, weight, and identity of substance in the following circumstances:
 (A) In any criminal prosecution for a violation of this chapter . . . a laboratory report from the bureau of criminal identification and investigation. . . signed by the person *Page 10 performing the analysis, stating that the substance that is the basis of the alleged offense has been weighed and analyzed and stating the findings as to the content, weight, and identity of the substance and that it contains any amount of a controlled substance and the number and description of unit dosages, is prima-facie evidence of the content, identity, and weight or the existence and number of unit dosages of the substance.
 * * *
 Attached to that report shall be a copy of a notarized statement by the signer of the report giving the name of the signer and stating that the signer is an employee of the laboratory issuing the report and that performing the analysis is a part of the signer's regular duties, and giving an outline of the signer's education, training, and experience for performing an analysis of materials included under this section. The signer shall attest that scientifically accepted tests were performed with due caution, and that the evidence was handled in accordance with established and accepted procedures while in the custody of the laboratory.
 (B) The prosecuting attorney shall serve a copy of the report on the attorney of record for the accused, or on the accused if the accused has no attorney, prior to any proceeding in which the report is to be used against the accused other than at a preliminary hearing or grand jury proceeding where the report may be used without having been previously served upon the accused.
 (C) The report shall not be prima-facie evidence of the contents, identity, and weight or the existence and number of unit dosages of the substance if the accused or the accused's attorney demands the testimony of the person signing the report, by serving the demand upon the prosecuting attorney within seven days from the accused or the accused's attorney's receipt of the report. The time may be extended by a trial judge in the interests of justice. *Page 11 
 (D) Any report issued for use under this section shall contain notice of the right of the accused to demand, and the manner in which the accused shall demand, the testimony of the person signing the report.
 {¶ 23} Thus, R.C. 2925.51 permits the prosecution to submit a laboratory report as evidence in drug cases, and the statute requires the prosecution to serve a copy of the report on the defendant. Under the statute, the laboratory reports will serve as prima facie evidence of the identity and weight of the controlled substances unless the defendant demands the testimony of the person who signed the report within seven days of receiving the prosecutor's notice of intent to submit the report. R.C. 2925.51(C).
 {¶ 24} In the present case, Urbina did not demand the testimony of the laboratory technician and the analyst was not presented as a witness at trial. State's Exhibits three and four, the laboratory reports prepared for the drugs purchased on March 10, 2004 and March 18, 2004, respectively, were introduced at trial without objection.
 {¶ 25} On appeal, Urbina relies on our decision in State v.Smith, 3rd Dist. No. 1-05-39, 2006-Ohio-1661 to support his argument that the introduction of these reports violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. *Page 12 
 {¶ 26} As noted in Smith, the Supreme Court decision in Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 "changed the legal landscape surrounding Confrontation Clause issues.Smith, supra, at ¶ 11. After conducting an analysis of the impact of theCrawford decision on the admissibility of laboratory reports, theSmith Court held that a criminal defendant can waive his confrontation rights by failing to demand the testimony of the laboratory technicians under R.C. 2925.51(C) for the following reason:
 First, nothing in Crawford or in the text of the Sixth Amendment requires that the right of confrontation must occur at trial; the Amendment merely states that the defendant has the right to confrontation during the course of the prosecution. U.S. Const. amend. VI. The "prosecution" has commenced once the defendant has been indicted. Just as Smith would have waived his confrontation rights by not objecting if the report was submitted at trial without the accompanying testimony, under the statute Smith waives his right to confrontation when he fails to demand the testimony of the technician. There is no constitutional violation by requiring the criminal defendant to assert the confrontation right at a specific time; the common law already required that the defendant assert the right at trial or it is waived. City of Westlake v. Moore, Eighth App. NO. 79293, 2002-Ohio-1097, 2002 WL 451295, at *2 (citing State v. Williams (1977), 51 Ohio St.2d 112, 364 N.E.2d 1364).
 * * *
 Finally, in addition to these protections, under the statute the defendant is provided with the precise evidence to be introduced against him, i.e. the entire drug analysis and the qualifications of the technician who performed it. Thus, the defendant has the ability to "confront" the statements against him if he so chooses and has been fully informed as to the exact testimony to which he is waiving his confrontation rights. These aspects of the *Page 13 statute, coupled with the fact that we have imposed the requirements of the statute strictly against the prosecution, see State v. Bates, Allen App. No. 1-03-83, 2004-Ohio-2219, ¶ 5-10, provide sufficient protections to the defendant's confrontation rights such that if he fails to act after proper notification he has knowingly, intelligently, and voluntarily waived his confrontation rights.
Smith, supra, at ¶ 18-20.
 {¶ 27} The question, then, is whether the defendant has properly waived his confrontation rights in the case sub judice. Ordinarily, waiver of the confrontation right before trial must be made knowingly, intelligently, and voluntarily. See Boykin v. Alabama (1969),395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274; State v. Ballard (1981),66 Ohio St.2d 473, 423 N.E.2d 115.
 {¶ 28} In the present case, the State's notification is technically compliant with R.C. 2925.51(D) and provides:
 THE ACCUSED HAS THE RIGHT TO DEMAND THE TESTIMONY OF THE NAMED ANALYST ABOVE BY SERVING SUCH DEMAND UPON THE PROSECUTING ATTORNEY WITHIN SEVEN (7) DAYS OF THE ACCUSED'S OR HIS ATTORNEY'S RECEIPT OF THE LABORATORY REPORT.
However, this waiver makes no mention of the consequences as set forth in R.C. 2925.51; namely that failure to make the demand will permit the laboratory report to serve as prima facie evidence of the conclusions in the report without the testimony of the technician. *Page 14 
 {¶ 29} In Smith, this Court found that the purpose of serving the report on the defendant and notifying him that he had a right to demand testimony is to inform him that the report will be offered into evidence against him without such testimony unless he makes such a demand.Smith, supra at ¶ 23. Moreover, this Court found that fully informing a defendant involves not just the use of statutorily complaint language, but informing him of the consequences of the waiver as follows:
 [T]he laboratory report in question is testimonial evidence under the Supreme Court's decision in Crawford, and therefore Smith has a right to confront the laboratory technician who "testifies" through the report. In the ordinary case the State can utilize the evidentiary procedures outlined in R.C. 2925.51 to submit the laboratory report as evidence without the accompanying testimony, and if the defendant does not demand the testimony he or she waives the right to confrontation. The provisions in the statute, particularly the requirements in subsections (A) and (B), sufficiently protect the defendant's Confrontation Clause rights. However, in order to obtain a valid waiver of those rights the prosecution must go beyond the minimal demand requirements outlined in R.C. 2925.51(D). The prosecution must fully notify the defendant of the effect of his failing to make a demand, which we hold necessarily includes informing the defendant that the report will be used as prima facie evidence against him as specified in the statute.
Smith, supra at ¶ 26.
 {¶ 30} Although the same notification language was utilized in bothSmith and the case sub judice, it is at this point that these cases become distinguishable. In Smith, although the defendant received the same deficient notice that the Urbina *Page 15 
received, Smith objected to the introduction of the laboratory reports at trial. The Smith court found that the notice given was not sufficient to have created a valid (i.e., knowing, intelligent, and voluntary) prior waiver to effectively override the defendant's later attempt to assert his confrontation rights at trial.
 {¶ 31} In the present case, no objection was made to the introduction of the laboratory reports. Moreover, during closing argument Urbina's counsel stated:
 The issue here, to be honest, is not whether, you know, that these drugs aren't one point nine [grams] or one point five one [grams]. . . the issue is did this particular Defendant, is he the gentleman that committed these offenses.
(Tr.p. 283).
 {¶ 32} Throughout the presentation of evidence at trial, no effort was made to dispute the identification and weight of the drugs. Instead, Urbina focused on establishing that someone else sold the drugs. It is apparent from the record that Urbina's strategic decision was to dispute that he sold the drugs, not that crack cocaine was in fact sold.
 {¶ 33} We are mindful that "plain error cannot be used to negate a deliberate, tactical decision by trial counsel." State v. Noggle (2000),140 Ohio App. 3d 733, 745, 749 N.E.2d 309, 2000-Ohio-1927. See alsoState v. Reuschling, 11th Dist. No. 2007-A-0006,2007-Ohio-6726. *Page 16 
 {¶ 34} Because we review this argument under the plain error standard, we cannot presume that merely because the language of the waiver is deficient, Urbina did not intend to waive his right to confront the laboratory analyst. Instead, we would have to find that the three-part test as articulated in Barnes was satisfied, such that there was error, the error was plain, and the error must have affected the outcome of the trial. Barnes, supra.
 {¶ 35} In this case, on the record before us, we cannot find that the error affected the outcome of the trial. In reviewing the trial record, not a single suggestion was made that perhaps the substances were not crack cocaine or that the drug analysis was in any way scientifically inadequate. Nothing in the record indicates that had the laboratory analyst testified, the outcome of the trial would have been any different. Therefore, we are unable to find that the admission of the laboratory reports rises to the level of plain error.
 {¶ 36} Finally, while we do not find it necessary to our conclusion in this case, we must note the recent decision of the Supreme Court of Ohio in State v. Crager, 116 Ohio St.3d 369, 879 N.E.2d 745, 2007-Ohio-6840
which raises a significant question as to whether drug analysis reports such as the one in this case are to be regarded as "testimonial" at all under the Crawford decision and thus may not invoke any confrontation rights. Based on all of the foregoing, Urbina's first assignment of error is overruled. *Page 17 
 Second Assignment of Error {¶ 37} In reviewing sentencing decisions of a trial court, an appellate court conducts a meaningful review of the sentence decision.State v. Carter 11th Dist. No. 2003-P-0007, 2004-Ohio-1181. "Meaningful review" means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for re-sentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law. Carter, at ¶ 44 citing State v. Comer
(2003), 99 Ohio St.3d 463, 476, 793 N.E.2d 473; R.C. 2953.08.
 {¶ 38} Additionally, a court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing which are to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. Id .
 {¶ 39} As a preliminary matter, we note that Urbina committed both of his offenses prior to, but was sentenced after the Supreme Court of Ohio rendered its decisions in State v. Foster (2006), 109 Ohio St.3d 1,845 N.E.2d 470, 2006-Ohio-856 and State v. Mathis (2006), 109 Ohio St.3d 54,846 N.E.2d 1, 2006-Ohio-855. *Page 18 
 {¶ 40} In Foster, the Supreme Court of Ohio addressed constitutional issues concerning felony sentencing and held that portions of Ohio's felony sentencing framework were unconstitutional and void, including R.C. 2929.14(B) requiring judicial findings that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender, and R.C. 2929.14(C) which requires judicial fact-finding for maximum prison terms. See Foster, 2006-Ohio-856 at ¶ 97, 103. Regarding new sentences and re-sentences, the Supreme Court of Ohio stated, "we have concluded that trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster at ¶ 100; see also Mathis, at paragraph three of the syllabus.
 {¶ 41} In Mathis, decided the same day as Foster, the Supreme Court of Ohio provided, in relevant part, as follows:
 As we have held in Foster, however, trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences . . . the trial court will have discretion to sentencing within the applicable range, following R.C. 2929.19 procedures.
Mathis at ¶ 37; see also State v. Wentling, 3rd Dist. No. 16-06-03,2007-Ohio-217. *Page 19 
 {¶ 42} However, a trial court must still consider the overall purposes of sentencing as set forth in R.C. 2929.11, as well as the factors relating to the seriousness of the offense and recidivism of the offender under R.C. 2929.12, when sentencing an offender. State v.Smith, 3rd Dist. No. 2-06-37, 2007-Ohio-3129 at ¶ 26 citingMathis, 2006-Ohio-855 at ¶ 38. But, under R.C. 2929.12, a sentencing court is not required to use specific language regarding its consideration of the seriousness and recidivism factors. Id. citingState v. Sharp 10th Dist. No. 05AP-809, 2006-Ohio-3448; State v.Amett (2000), 88 Ohio St.3d 208, 205; 724 N.E.2d 793, 2000-Ohio-302;State v. McAdams, 162 Ohio App.3d 318; 833 N.E.2d 373, 2005-Ohio-3895; and State v. Patterson, 8th Dist. No. 84803, 2005-Ohio-2003. Further, there is no requirement in R.C. 2929.12 that the trial court state on the record that it has considered the statutory criteria or even discussed them. Id. citing State v. Polick (1995), 101 Ohio App.3d 428,431; 655 N.E.2d 820; State v. Gant, 7th Dist. No. 04-MA-252,2006-Ohio-1469 (nothing in R.C. 2929.12 or the decisions of the Ohio Supreme Court imposes any duty on the trial court to set forth its findings); State v. Hughes 6th Dist. No. WD-05-024, 2005-Ohio-6405
(trial court was not required to address each R.C. 2929.12 factor individually and make a finding as to whether it was applicable).
 {¶ 43} In the present case, the trial court conducted Urbina's sentencing hearing pursuant to R.C. 2929.19, which provides, in relevant part, as follows: *Page 20 
 (A)(1) The court shall hold a sentencing hearing before imposing a sentence under this chapter upon an offender who was convicted of or pleaded guilty to a felony . . . At the hearing, the offender, the prosecuting attorney, the victim or the victim's representative . . . and, with the approval of the court, any other person may present information relevant to the imposition of sentence in the case. The court shall inform the offender of the . . . finding of the court and ask the offender whether the offender has anything to say as to why sentence should not be imposed upon the offender.
 * * *
 (B)(1) At the sentencing hearing, the court, before imposing sentence, shall consider the record, any information presented at the hearing by any person pursuant to division (A) of this section, and, if one was prepared, the pre-sentence investigation report . . . and any victim impact statement made . . .
 {¶ 44} A review of the record in the present case demonstrates that the trial court followed the procedures set forth in R.C. 2929.19 and considered both R.C. 2929.11 and R.C. 2929.12 in sentencing Urbina. Furthermore, we find that Urbina's sentence was supported by the record.
 {¶ 45} Specifically, we note that at Urbina's May 2, 2006 sentencing hearing, the trial court stated as follows:
 . . . I do have the benefit of the pre-sentence investigation and report prepared by the Adult Parole Authority. . .
 It does indicate an extensive, extensive criminal history starting all the [way] back as a nine year old juvenile, Breaking and Entering. He juvenile criminal career then continued with another Breaking and Entering; Unruly; Theft; Juvenile Probation Violations; No License: a traffic accident; a Probation Violation; Underage Consumption; Curfew; *Page 21 Disorderly Conduct; No License; Underage Consumption; a Bench Warrant: Assault; Criminal Damaging; Criminal Damaging; another Assault; Curfew Violation; Underage Consumption; No License; Open Container; Underage Consumption; Criminal Falsification; Escape; Obstructing Official Business; all those as a juvenile.
 He then became an adult. Within six months of becoming an adult, started his adult criminal career, Unauthorized Use of a Motor Vehicle; Receiving Stolen Property; Underage Consumption; Disorderly Conduct; Underage Consumption; Possession of Drug Paraphernalia; Carrying Concealed Weapon; Possession of Drug Paraphernalia; Drunk Driving; Domestic Violence; Criminal Damaging; a Vehicle Immobilization; Underage Consumption; Possession of Drug Paraphernalia; Unauthorized Use of Motor Vehicle; Driving Under Suspension; Felony Drug Abuse; Probation Violation; Probation Violation; Resisting Arrest; Probation Violation; Possession of a Controlled Substance in a Correctional Facility; Probation Violation; Possession of a Controlled Substance; Evading Arrest or Detention While Using a Vehicle; Driving Under Suspension; Burglary of a Habitation; Assault; Driving Under Suspension; Drunk Driving; Open Container in a Motor Vehicle; Failure to Comply with the Order or Signal of a Police Officer. . .
 He's had multiple prior felonies. He's previously been incarcerated in state institutions both in Ohio and Texas. The Prosecutor correctly points out that he takes no personal responsibility for any of the myriad of crimes that he's committed.
(Tr. p. 16-17).
 . . . [T]his individual is among the most likely to recidivate based upon his constant repetition of criminal behavior. He is among the most dangerous to society in that his convictions are frequently violent. He is among the least likely to be able to be rehabilitated because of his repeated drug and alcohol abuse *Page 22 that he refuses to deal with whenever he's been subject to various efforts to treat him with community based sanctions insofar as he's had half a dozen or more probation violations as a juvenile and an adult. He's dangerous to the community. He is a meance and has no intention based upon the attitude he's displayed of every changing his behavior.
 {¶ 46} Thus, although the trial court was not required to set forth its specific findings, nor was it required to specifically state that it considered each of the subsections of R.C. 2929.11, R.C. 2929.12, or R.C. 2929.13 pursuant to Foster, and Smith, supra, the record clearly evinces that the trial court considered the requisite factors of R.C.2929.12 in imposing Urbina's prison term. Therefore, we cannot clearly and convincingly find that the record does not support Urbina's sentence or that the sentence is otherwise contrary to law.
 {¶ 47} Finally, pursuant to R.C. 2929.14(A),
 . . . [i]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender pursuant to this chapter, the court shall impose a definite prison term that shall be one of the following:
 * * *
 (3) For a felony of the third degree, the prison term shall be one, two, three, four, or five years.
 (4) For a felony of the fourth degree, the prison term shall be six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. *Page 23 
 {¶ 48} Accordingly, we note that Urbina could have been sentenced to a prison term of as little as one year for his third degree felony conviction, or the maximum prison term of five years for his third degree felony conviction. For his fourth degree felony conviction, Urbina could have been sentenced to as little as six months, or to as much as eighteen months. In this case, the trial court could have sentenced Urbina to prison terms of five years and one and a half years for his felony convictions, to be served consecutively. Urbina was sentenced to four years and seventeen months, to be served consecutively. Therefore, Urbina's sentence was within the allowed range and below the statutory maximum sentence he could have received.
 {¶ 49} In addition, for the reasons articulated in State v.McGhee, 3rd Dist. No. 17-06-05, 2006-Ohio-5162, we find that his sentence does not violate the Ex Post Facto and Due Process Clauses of the United States Constitution. Accordingly, Urbina's second assignment of error is overruled.
 Third Assignment of Error {¶ 50} In his third assignment of error, Urbina contends that the trial court erred in imposing a fine and restitution as part of his sentence. More specifically, Urbina appears to argue that the trial court did not appropriately consider his ability to pay restitution and mandatory fines before imposing those costs. *Page 24 
 {¶ 51} In State v. White, 103 Ohio St.3d 580, 817 N.E.2d 393,2004-Ohio-5989, at ¶ 8, the Ohio Supreme Court held that "R.C. 2947.23
does not prohibit a court from assessing costs against an indigent defendant; rather it requires a court to assess costs against all convicted defendants."
 {¶ 52} This Court has previously noted that "[t]here is a difference between a finding of indigency for purposes of receiving appointed legal counsel and the finding of indigency to avoid having to pay a mandatory fine." State v. Powell (1992), 78 Ohio App.3d 784, 789, 605 N.E.2d 1337. Moreover, an affidavit of indigency filed for purposes of appointed counsel is not sufficient to demonstrate indigency for purposes of mandatory fines. State v. Gibson, 4th Dist. No. 03CA1, 2003-Ohio-4910, ¶¶ 21-27; State v. King, 3rd. Dist. No. 2-01-03, 2001-Ohio-2236.
 {¶ 53} Instead, the Ohio Supreme Court has stated that R.C.2929.18(B)(1), "clearly requires that a sentencing court shall impose a mandatory fine upon an offender unless (1) the offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine, and (2) the court determines that the offender is in fact an indigent person and is unable to pay the mandatory fine." State v. Gipson, 80 Ohio St.3d 626, 631,687 N.E.2d 750, 1998-Ohio-659.
 {¶ 54} Nothing in the record before this Court demonstrates that Urbina filed an affidavit of indigency prior to sentencing. Urbina filed an affidavit of *Page 25 
indigency in order to qualify for court-appointed counsel prior to this case progressing to trial. Affidavits of Indigency were also filed on October 23, 2006 and again on December 14, 2006; these post-dated sentencing. Therefore, nothing in the record indicates that Urbina complied with the requirements of R.C. 2929.18(B)(1) by filing an affidavit of indigency prior to sentencing.
 {¶ 55} Urbina also argues that the trial court was required to consider his indigency before imposing restitution and mandatory fines. This Court has previously held that a hearing is not required to demonstrate that the trial court made this consideration. State v.Felder, 3rd Dist. No. 9-04-51, 2005-Ohio-546, at ¶ 6. Furthermore, this Court has held that where a sentencing court is on notice of a defendant's indigency through motions for appointed counsel, the court can be said to have considered the defendant's indigency when imposing costs, restitutions, and fines. Id. at ¶ 8.
 {¶ 56} In the case sub judice, Urbina had filed multiple motions for appointed counsel. Moreover, he received multiple appointments of counsel based on his indigency. We find, as we did in Felder, that the trial court considered Urbina's indigency when sentencing him. Therefore, Urbina's third assignment of error is overruled. *Page 26 
 Fourth Assignment of Error {¶ 57} In his fourth assignment of error, Urbina argues that his trial counsel was ineffective for failing to object to the introduction of the laboratory report, failing to object to the imposition of what Urbina terms "an illegal sentence," and failing to object to the order of restitution.
 {¶ 58} To demonstrate ineffective assistance of counsel, the burden is on the criminal defendant to "show that counsel's performance was deficient." Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed. 674. The Ohio Supreme Court has adopted the two part test articulated in Strickland for demonstrating ineffective assistance of counsel. State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus.
 {¶ 59} In order to prevail on a claim of ineffective assistance of counsel, an appellant must first show "that counsel's representation fell below an objective standard of reasonableness." State v.Bradley (1989), 42 Ohio St.3d at 142, citing Strickland,466 U.S. at 687-688. In Strickland, the Court noted that scrutiny of counsel's performance is to be "highly deferential." Strickland, 466 U.S. at 689.
 A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation. . . *Page 27 
State v. Bradley (1989), 42 Ohio St.3d at 142. "Ohio licensed attorneys are presumed competent in their representation of a defendant's interests." State v. Richardson, 3rd Dist. No. 13-06-21,2007-Ohio-115, citing State v. Hoffman (1988), 129 Ohio App.3d 403, 407,717 N.E.2d 1149. It is important to note that "the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance," when determining whether conduct fell below the objective standard of reasonableness. State v. Giesey, 3rd Dist. No. 5-06-31, 2006-Ohio-6851.
 {¶ 60} Moreover, Urbina must overcome a strong presumption that the challenged action constitutes trial strategy. State v. Carter (1995),72 Ohio St.3d 545, 558, 651 N.E.2d 905, 1995-Ohio-104. Therefore, in reviewing Urbina's counsel's performance, we must accord deference to counsel's trial tactics and cannot examine counsel's choices through hindsight. See Strickland, 466 U.S. at 689.
 {¶ 61} Urbina first argues that his counsel was ineffective for failing to object to the introduction of the laboratory reports. In Urbina's first assignment of error we found that the introduction of these reports without the testimony of the analyst did not rise to the level of plain error. *Page 28 
 {¶ 62} As we noted earlier, failure to demand the testimony of the analyst could well have been counsel's trial strategy. As this Court noted, when addressing a similar claim of ineffective assistance of counsel:
 Defense attorneys commonly do not wish to have a chemist present to testify at trial in order to de-emphasize the nature or amount of the drugs in front of the jury. Similarly, defense counsel may not want to be seen as objecting unnecessarily where the drug analysis is not relevant to the defendant's claim that she was unaware of the drugs or had no possession of them. In any event, we will not presume ineffectiveness or that these strategies were not legitimate solely from a failure to object at trial.
State v. Fulk, 3rd Dist. 15-07-08, 15-07-09,2007-Ohio-6975. Nor can we presume that had defense counsel made a pretrial demand for the testimony of the chemist, the outcome of the trial would have been different. See Strickland, 466 U.S. at 688, 694.
 {¶ 63} As previously noted, Urbina's counsel stated during his closing argument that the weight and identity of the drugs were not at issue in this case. Rather, Urbina's defense was that he did not sell the drugs to Hill; that it must have been someone else. Furthermore, no one even suggested at trial the drugs were not crack cocaine, as identified in the report. We cannot find that a pre-trial demand for the testimony of the analyst would have altered the outcome at trial. Accordingly, on this record we cannot find that Urbina's counsel was ineffective for failing to object to the admission of the laboratory reports. *Page 29 
 {¶ 64} With respect to the remainder of this assignment of error, we note that these arguments have been addressed in Urbina's second and third assignments of error. Therefore, we do not need to further address these arguments. Accordingly, Urbina's fourth assignment is overruled.
 {¶ 65} Based on the foregoing, the May 2, 2006 Judgment Entry of the Court of Common Pleas of Defiance County, Ohio is affirmed.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. r
[1] We also note that this sentence was ordered to be served consecutively with Urbina's sentences in Case Nos. 04CR08946, 05CR09186, and 05CR09264 for a total of nineteen years and eleven months in prison.
[2] A Char-Boy is a household cleaning pad that is often used as filtration in a crack pipe, which is used for smoking crack cocaine.
[3] This charge was elevated to a felony of the third degree based on the jury finding that the offense occurred within 1000 feet of a school pursuant to R.C. 2925.03(C)(4)(c) which provides in pertinent part:
 (c) Except as otherwise provided in this division, if the amount . . . exceeds one gram but is less than five grams of crack cocaine, trafficking in cocaine is a felony of the fourth degree, and there is a presumption for a prison term for the offense. If the amount of the drug involved is within one of those ranges and if the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the third degree, and there is a presumption for a prison term for the offense. *Page 1