DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant, Tracy M. Judy, appeals her conviction and sentence in the Ross County Court of Common Pleas on one count of possession of cocaine, in violation of RC. 2925.11, a felony of the first degree. Appellant contends that (1) her right of confrontation was violated by the improper admission of testimonial evidence, specifically, the admission of the BCI I report without in-court testimony of the lab analyst; (2) the judgment of conviction is based upon insufficient evidence; (3) the verdict was against the manifest weight of the evidence; (4) the trial court *Page 2 
did not properly instruct the jury; (5) she was denied a fair trial when she was tried in prison clothing; (6) she was denied effective assistance of counsel; and (7) she was denied a fair trial by cumulative error. We affirm the trial court's decision because we find that Appellant's right of confrontation has was not violated, and the conviction is supported by sufficient evidence and not against the manifest weight of the evidence. Further, we find that the trial court properly instructed the jury and she received a fair trial and did not receive ineffective assistance of counsel.
 FACTS {¶ 2} On March 4, 2007, Officer David Hill of the Chillicothe Police Department was flagged down by an individual who wished to remain anonymous and was informed that there was a fight or disturbance, as well as possible drug activity, at 30 East Water Street, Apt. 28 in Chillicothe. After receiving a call for assistance, Officer Casey Cox, also of the Chillicothe Police Department, arrived and the two officers went to the apartment. Upon arriving, the two officers found the front door of the apartment ajar and observed an individual smoking a crack pipe. When the officers knocked on the door, the door opened the rest of the way and the officers entered the residence. After speaking with the renters of the apartment, Richard Hardin and Nesta Karshner, the officers obtained consent *Page 3 
to search the premises. As a result of the search activity of the residence, Appellant, who was present but did not reside there, was arrested and charged with one count of possession of cocaine, in violation of R.C. 2925.11, a felony of the first degree.
 {¶ 3} On March 5, 2007, a complaint was filed in the Chillicothe Municipal Court alleging that Appellant had possessed crack cocaine, a Schedule II controlled substance, in an amount exceeding 25 grams but not 100 grams in unit dose form, a violation of R.C. 2925.11(C)(4)(E), a felony of the first degree. The matter was bound over to the Ross County Court of Common Pleas on March 12, 2007, and Appellant was formally indicted on the charge on March 30, 2007. Appellant was arraigned on April 16, 2007, and entered a not guilty plea.
 {¶ 4} A one-day jury trial took place on January 24, 2008. As there was no request to appear in plain clothes, Appellant appeared at trial in prison attire. Appellant's counsel brought out this fact during voir dire. When asked by Appellant's counsel if anyone on the jury would be unable to treat Appellant fairly as a result, there was no indication from the jury that there would be a problem. The State presented testimony from two witnesses, Officers Hill and Cox. At trial, Officer Hill testified that upon initially searching the residence, he located Appellant and two other *Page 4 
individuals in a back bedroom. Officer Hill further testified that after doing a brief visual search of the living room and determining that there were no weapons, drugs, or drug paraphernalia located there, he ordered Appellant, as well as the other individuals in the residence to go into the living room, where they were seated on the floor along the wall. Appellant was seated along the wall sitting Indian style, with her legs crossed. According to Officer Hill's testimony, a sergeant had arrived by this time and ordered the officers to begin searching all of the people that were in the house.
 {¶ 5} Officer Hill testified that he watched closely while Officer Cox proceeded to search each individual, beginning with the men first. Because the officers had already confiscated what appeared to be a bag of crack cocaine from Derrick Thompson as he lay upon the couch, the officers ordered Thompson to move to the wall to be searched. Officer Hill testified that he observed Thompson move to the wall, with his hands up, in order that Officer Cox could search him. Because Appellant was sitting too close to the area in which Thompson was going to be searched, she was ordered to move. When she got up to move, both officers observed a bag of what *Page 5 
appeared to be crack cocaine under her thigh.[1] The officers secured that evidence, which was later determined to be crack cocaine.
 {¶ 6} When questioned about Appellant's explanation regarding the substance that was found by the officers, Officer Hill testified that Appellant claimed that the drugs did not belong to her and that Thompson had dropped them from his hand was he walked by. However, Officer Hill testified that that was impossible because he was watching Thompson the whole time as he walked from the couch to the wall and he had nothing in his hands. Before leaving the stand, Officer Hill testified regarding State's Exhibit A, which was the bag containing what was determined to be crack cocaine that was found under Appellant's thigh. Officer Hill further testified regarding State's Exhibit B, which was the laboratory report from BCI I identifying State's Exhibit A as 28.3 grams of cocaine base (crack cocaine).
 {¶ 7} Officer Cox also provided testimony at trial. He testified that he too watched Thompson the entire time as he walked from the couch to the wall to be searched. Officer Cox testified that Thompson did not drop or kick anything to Appellant. Contrary to assertions made in Appellant's *Page 6 
brief, Officer Cox testified that Appellant was not searched or even patted down prior to being transferred from the bedroom to the living room. He further testified that there was nothing on the floor in the living room prior to ordering Appellant and the others into that room to be searched.
 {¶ 8} The State then moved to admit their Exhibits A and B. Appellant's counsel objected to the admittance of Exhibit B, the BCI I laboratory report, on the ground that it contained information pertaining to all of the other drugs that were confiscated in the house, and not just the drugs alleged to have been possessed by Appellant. Appellant's counsel subsequently agreed to the admission of Exhibit B, provided that the other information was redacted before being provided to the jury. The State then rested its case, as did Appellant, without presenting any evidence.
 {¶ 9} Before giving the case to the jury, the court raised an issue with counsel regarding Appellant's appearance at trial in prison clothing. In doing so, the court noted on the record that the case had been pending for several months and that Appellant had ample time to get different clothing for trial. The court offered to instruct the jury on the issue; however, Appellant's counsel declined and indicated he thought that the issue had been covered adequately and that it would be better not to remind the jury of it again. *Page 7 
 {¶ 10} After receiving its instructions, which included definitions of both actual and constructive possession, the jury retired to deliberate. Before reaching their verdict, the jury asked two questions, one of which inquired as to why Appellant was wearing prison clothes. At that point, the court provided an instruction to the jury instructing them that the clothing worn by Appellant was irrelevant and not to be considered by them in their deliberations. There were no objections made to the curative instruction given by the court. The jury ultimately returned a unanimous verdict of guilt and Appellant was convicted and sentenced to four years of incarceration for possession of cocaine. It is from this conviction and sentence that Appellant now brings her timely appeal, assigning the following errors for our review.
 ASSIGNMENTS OF ERROR "I. DEFENDANT-APPELLANT'S RIGHT OF CONFRONTATION WAS VIOLATED BY THE IMPROPER ADMISSION OF TESTIMONIAL EVIDENCE.
 II. THE JUDGMENT OF CONVICTION IS BASED UPON INSUFFICIENT EVIDENCE.
 III. THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 IV. THE TRIAL COURT DID NOT PROPERLY INSTRUCT THE JURY.
 V. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL WHEN SHE WAS TRIED IN PRISON CLOTHING. *Page 8 
 VI. THE DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 VII. THE DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL BY CUMULATIVE ERROR."
 FIRST ASSIGNMENT OF ERROR {¶ 11} In her first assignment of error, Appellant contends that she was deprived of her right of confrontation by the improper admission of testimonial evidence. Specifically, Appellant questions whether a BCI I lab report may be admitted as evidence in the absence of expert in-court testimony from the lab analyst. Appellant relies onCrawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354 and State v.Smith, Allen App. No. 1-05-39, 2006-Ohio-1661 in support of her contention that such lab reports are testimonial in nature. Appellant further contends that admittance of such a report without expert in-court testimony of the lab analyst is plain error. For the following reasons, we disagree.
 {¶ 12} In State v. O'Connor, Fayette App. No. CA2007-01-005,2008-Ohio-2415[2], the Twelfth District Court of Appeals recently considered many of the issues raised in the present appeal. In doing so, the O'Connor court noted that R.C. 2925.51 permits the state to submit a BCI I laboratory *Page 9 
report as evidence in drug cases and requires the state to serve a copy of the report on the accused. R.C. 2925.51(A) and (B). BCI I reports will serve as prima facie evidence of the identity and weight of the controlled substance unless the defendant, within seven days of receiving the state's notice of intent to submit the report, demands the testimony of the person who signed the report. R.C. 2925.51(C). O'Connor at ¶ 24.
 {¶ 13} As was the case in O `Connor, here Appellant did not demand the testimony of the laboratory technician who signed the BCI I report, as permitted under R.C. 2925.51(C), nor has she claimed that the state failed to comply with the requirements of divisions (A) and (B) of that section. Nevertheless, she contends that admission of the BCI I report violated her right of confrontation under Crawford v. Washington, as set forth in State v. Smith, Allen App. No. 1-05-39, 2006-Ohio-1661.[3]
 {¶ 14} However, Appellant did not object to the admission of the BCI I report at her trial on the specific ground that she is raising here, to *Page 10 
wit: that the report's inclusion into evidence violated her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Instead, the only objection Appellant raised at trial regarding the BCI I report was that the report contained scientific findings related to other drugs found in the apartment, in addition to the drugs alleged to have been possessed by Appellant. After entering an objection; however, Appellant's counsel subsequently agreed to the admission of the lab report provided that the other information was redacted before being provided to the jury.
 {¶ 15} Evid. R. 103(A)(1) provides that a claim of error may not be predicated upon a ruling that admits or excludes evidence unless a substantial right of the party is affected and, if the ruling is one admitting the evidence, the opponent of the evidence raises a timely objection to the evidence, stating the specific ground of objection, unless the ground of objection is apparent from context. Cf.Smith, 2006-Ohio-1661 at ¶ 8 (while defendant did not demand the testimony of laboratory technicians who prepared report, he did raise an objection at trial to the report's admission on Confrontation Clause grounds).
 {¶ 16} As a result of Appellant's failure to object to the admission of the BCI I report on Confrontation Clause grounds, we need only determine *Page 11 
whether the admission of the report amounted to plain error, which Appellant contends exists. See State v. Urbina, Defiance App. No. 4-06-21, 2008-Ohio-1013, ¶ 19, 35 (Third Appellate District finding that failure to object at trial to the admission of a laboratory report on Confrontation Clause grounds waived all but plain error). However, we conclude that the trial court's admission of the BCI report did not constitute error, plain or otherwise.
 {¶ 17} The Twelfth District Court recently held that a drug analysis report completed by BCI I does not constitute "testimonial" evidence under Crawford and, therefore, the defendant's Confrontation Clause rights under Crawford were not violated by the report's admission into evidence. State v. Malott, Butler App. Nos. CA2007-02-006, CA2007-02-007, CA2007-02-008, 2008-Ohio-2114, ¶ 15. In support of their decision, the Malott court noted the Supreme Court of Ohio held inState v. Crager, 116 Ohio St.3d 369, 2007-Ohio-684, that the admission of DNA reports without the testimony of the analyst who prepared the report did not violate the defendant's Confrontation Clause rights underCrawford since the reports fell within the business records exception to the hearsay rule of *Page 12 
Evid. R. 803(6), and thus were not "testimonial" evidence underCrawford[4] Malott at ¶ 13. See, also, Urbina, 2008-Ohio-1013, ¶ 36
(admission of laboratory report was not plain error because, among other things, Crager "raises a significant question as to whether drug analysis reports * * * are to be regarded as `testimonial' at all under the Crawford decision and thus may not invoke any confrontation rights").
 {¶ 18} Although Appellant requests that this Court distinguish the present case from Crager, supra, we decline to do so. InCrager, the Supreme Court of Ohio held that "[r]ecords of scientific tests are not `testimonial' under Crawford v. Washington (2004), 541 U.S.36, 124 S.Ct. 1354, * * *." paragraph one of the syllabus. In light of this holding, and based on the well reasoned opinion of the Twelfth District in O `Connor, we conclude that BCI I lab reports are nontestimonial in nature and their admission does not violate the right of confrontation. Accordingly, Appellant's first assignment of error is overruled.
 SECOND AND THIRD ASSIGNMENTS OF ERROR {¶ 19} In her second and third assignments of error, Appellant contends, respectively, that the judgment of conviction was based upon insufficient evidence and that the verdict was against the manifest weight of *Page 13 
the evidence. We will consider these assignments of error in conjunction with one another because the issues raised under each are identical.
 {¶ 20} When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781.
 {¶ 21} This test raises a question of law and does not allow us to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175. Rather, the test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson at 319. We reserve the issues of the weight given to the evidence and the credibility of witnesses for the trier of fact.State v. Thomas (1982), 70 Ohio St.2d 79, 79-80, 434 *Page 14 
N.E.2d. 1356; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 22} Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence. State v. Banks
(1992), 78 Ohio App.3d 206, 214, 604 N.E.2d 219; State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. In determining whether a criminal conviction is against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v.Garrow (1995), 103 Ohio App.3d 368, 370-71, 659 N.E.2d 814;Martin at 175.
 {¶ 23} "A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus. Whether the evidence supporting a defendant's conviction is *Page 15 
direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." Jenks, 61 Ohio St.3d 259 at paragraph one of the syllabus.
 {¶ 24} Appellant was convicted of possession of cocaine, in violation of R.C. 2925.11, specifically sections (A) and (C)(4), which provides:
(A) No person shall knowingly obtain, possess, or use a controlled substance.
* * *
(C) Whoever violates division (A) of this section is guilty of one of the following:
* * *
(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. * * *
 {¶ 25} First, Appellant contends that her conviction was against the sufficiency and manifest weight of the evidence because the State failed to prove that the substance allegedly possessed by her is listed as a controlled substance under Schedule II of R.C. 3719.41. It is important to note that in making this argument, Appellant implicitly relies on the premise that the BCI I laboratory report, which provided evidence as to the existence and weight of the controlled substance involved, was inadmissible. However, *Page 16 
we have already rejected that contention in our disposition of Appellant's first assignment of error.
 {¶ 26} Further, this argument was also considered and rejected inState v. O'Connor, supra, at ¶ 37. In O'Connor, the appellant argued that the State failed to prove that the seized substances at issue were Schedule II controlled substances. In considering this argument, theO'Connor court concluded that "* * * the state was not required to prove that crack cocaine, cocaine, or marijuana are controlled substances in Schedules I or II or R.C. 3719.41 because, by law. they are."O'Connor at ¶ 40; citing State v. Rollins, Paulding App. No 11-05-08,2006-Ohio-1879 (finding that "* * * the State is not required to provide evidence that methamphetamine is controlled substance in schedule I or II of R.C. 3719.41, because by law, methamphetamine is a controlled substance as listed in Schedule II.). Thus, in the present case, the State presented sufficient evidence, by virtue of the BCI I laboratory report, that the substance that formed the basis of the charge against Appellant was crack cocaine, which is, as a matter of law, a Schedule II controlled substance. Further, the BCI I lab report constitutes substantial evidence from which the jury could conclude that this element of the offense had been proven beyond a reasonable doubt. *Page 17 
 {¶ 27} Appellant next argues under these assignments of error that there was no evidence of actual possession of cocaine and seems to object to the doctrine of constructive possession, in general, as being unconstitutional. As correctly noted by the State in its appellate brief, although Appellant seems to make a constitutional challenge to the doctrine of constructive possession, she does not indicate how this doctrine is facially unconstitutional or unconstitutional as applied to her. Further, this Court has previously recognized the doctrine of constructive possession in State v. Matteson, Vinton App. No. 06CA642,2006-Ohio-6827, which holding was used as a guide by the trial court in providing the jury instruction on actual and constructive possession of cocaine.
 {¶ 28} Here, there is evidence that two officers observed a bag of what was subsequently determined to be crack cocaine under Appellant's thigh as she stood up to move, after having been sitting on the floor Indian style, with her legs crossed. Both officers further testified that Appellant was ordered to sit on the floor in the living room, only after that room had been visually searched and determined to be clear of weapons, drugs or drug paraphernalia. Further, and despite Appellant's contention to the contrary, Officer Cox testified that Appellant had not been searched, or even patted down, prior to the officers' observation of the bag of crack cocaine under her *Page 18 
thigh. Thus, Appellant's constitutional challenge to the doctrine of constructive possession is not well taken. Further, Appellant's argument that her conviction and sentence was against the sufficiency and manifest weight of the evidence is overruled as not only sufficient, but substantial evidence supports the jury's conclusion that the possession element of the offense had been proven. Accordingly, Appellant's second and third assignments of error are overruled.
 FOURTH ASSIGNMENT OF ERROR {¶ 29} In her fourth assignment of error, Appellant contends that trial court committed plain error when it did not properly instruct the jury. Specifically, Appellant argues that the trial court was required to instruct the jury concerning the "statutorily-based scheduled classification of the drug involved," claiming that "the state had to prove beyond a reasonable doubt that defendant-appellant possessed a substance which was controlled for purposes of Ohio law." Appellant acknowledges that her trial counsel failed to object to the instructions as given, but claims that the trial court committed plain error in providing the instruction. In light of our determination under Appellant's second and third assignments of error, that proving that cocaine is a controlled substance under Schedule II is not an *Page 19 
element of the offense of possession of cocaine, and for the following reasons, we disagree.
 {¶ 30} Appellant failed to object to these jury instructions at trial, and thus has waived all but plain error. See State v. Wamsley,117 Ohio St.3d 388, 2008-Ohio-1 195, 884 N.E.2d 45, ¶ 1 (trial court's error in failing to instruct jury on culpable mental state of charged offense is not "structural" error, but merely "plain" error, and thus must be analyzed under a plain-error analysis). Crim. R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To recognize an error not brought to the trial court's attention in a timely manner, an appellate court must find that: (1) there was an error, i.e., a deviation from a legal rule; (2) the error must be "plain" in that it presents an obvious defect in the trial proceedings; and (3) the error must have affected "substantial rights," meaning that it affected the outcome of the trial. State v. Barnes, 94 Ohio St.3d 21,27, 2002-Ohio-68, 759 N.E.2d 1240. Even where the defendant shows that an error not objected to at trial affects his or her substantial rights, an "appellate court has discretion to disregard the error and should correct it `only to prevent a manifest miscarriage of justice.'"Wamsley at ¶ 27, quoting State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph three of the syllabus. *Page 20 
 {¶ 31} Here, the alleged error in the jury instructions does not amount to plain error. It was not plain error for the trial court to fail to instruct the jury to make a finding that the controlled substance involved in this case fell into Schedule II of R.C. 3719.41
because, as a matter of law, crack cocaine falls into this schedule. Thus, even if Appellant's counsel had objected to the instruction, there would have been no basis for the objection and the trial court did not commit plain error in providing the instruction as given. Accordingly, Appellant's fourth assignment of error is overruled.
 FIFTH ASSIGNMENT OF ERROR {¶ 32} In her fifth assignment of error, Appellant contends that she was denied a fair trial when she was tried in prison clothing. Appellant does not argue that she was compelled by the state or by the court to wear prison clothing, thus we do not address the issue from that standpoint. Rather, the only argument Appellant seems to make, actually set forth in her next assignment of error, is that her counsel was ineffective for not dressing her appropriately for trial and that such error prejudiced the jury. For the following reasons, we reject Appellant's argument.
 {¶ 33} In reviewing claims of ineffective assistance of counsel, appellate courts are admonished to be highly deferential, indulge a strong presumption that counsel's conduct falls within the wide range of reasonable *Page 21 
professional assistance, and refrain from second-guessing strategic decisions of trial counsel. See State v. Carter (1995),72 Ohio St.3d 545, 651 N.E.2d 965; State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373. This point is particularly significant, as trial tactics are generally not subject to question by a reviewing court. See State v.Fryling (1992), 85 Ohio App.3d 557, 620 N.E.2d 862.
 {¶ 34} "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." State v. Bradley, supra, paragraph two of the syllabus, citing Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052; State v. Lytle (1976), 48 Ohio St.2d 391,358 N.E.2d 623. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley at paragraph three of the syllabus.
 {¶ 35} "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington at 2068; see, also, State v. Bradley at 380. In this analysis, the court must consider the *Page 22 
totality of all the evidence before the judge or jury. See State v.Bradley at 142, citing Strickland at 2068.
 {¶ 36} Simply put, the Strickland test, adopted by the Supreme Court of Ohio in Bradley, requires that Appellant show, first, that trial counsel's performance was in some way deficient, and second, that that deficient performance prejudiced Appellant's defense. See Strickland v.Washington at 2052. Appellant argues that her trial counsel was ineffective because counsel failed to object to his client's wearing of prison attire during the course of the trial. In Estelle v.Williams (1976), 425 U.S. 501, 96 S.Ct. 1691, the United States Supreme Court held that the state cannot, consistent with Fourteenth Amendment Due Process and Equal Protection rights, compel a defendant to stand trial before a jury while dressed in identifiable prison clothing. However, the failure to object to the court in regard to being tried in prison clothing serves to negate the presence of compulsion by the state needed to show a constitutional violation. See Estelle at 512-513.
 {¶ 37} We are not presently dealing with an alleged violation of appellant's Fourteenth Amendment Due Process or Equal Protection rights as set forth in Estelle. There is no evidence in the record that the trial court or the state compelled Appellant to wear the prison-issued, orange jumpsuit during the trial. Rather, the issue this Court is faced with is whether the *Page 23 
failure of Appellant's trial counsel to object to the court regarding his client's prison garb constitutes deficient performance. And, if this inaction by counsel does constitute deficient performance, whether it prejudiced Appellant's case.
 {¶ 38} In rendering its judgment in Estelle, the United States Supreme Court noted that the courts have refused to establish a bright-line rule that would vacate every conviction where the accused appeared before the jury in prison garb. See Estelle at 507. Instead, the court emphasized that forcing a defendant to stand trial in prison garb, against his will, was to be condemned. See Id. The Estelle court stated that "The reason for this judicial focus upon compulsion is simple; instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury". Id. at 508; citingAnderson v. Watt (C.A .10, 1973), 475 F.2d 881, 882; Watt v. Page (C.A. 10, 1972), 452 F .2d 1174, 1176, certiorari denied (1972),405 U.S. 1070, 92 S.Ct. 1520; Garcia v. Beto (C.A.5, 1971), 452 F.2d 655, 656. *Page 24 
 {¶ 39} The Estelle court further stated that:
"Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system." Estelle at 512.
 {¶ 40} The United States Ninth Circuit Court of Appeals has dealt with a similar situation where a defendant claimed ineffective assistance of counsel based on his attorney's failure to object to the defendant's wearing of prison garb while attending his jury trial. See United Statesv. Wells (Oct. 13, 1998), C.A. 9, No. 97-35656, unreported, 1998 U.S.App. LEXIS 26240, unreported. In Wells the court stated that "Although counsel's failure to object to certain evidence may be the proper basis for a claim of ineffective assistance of counsel, seeCrotts v. Smith, 73 F.3d 861, 866 (9th Cir. 1996), the circumstances here do not persuade us that [counsel's] conduct fell outside the wide range of professional competence. * * *. Because producing an accused in prison clothing is a valid defense tactic, it cannot be the sole basis for a determination of ineffective assistance of counsel." SeeWells, supra (emphasis added). *Page 25 
 {¶ 41} Similarly, we have previously stated that "Our review of trial counsel's performance must necessarily be highly deferential. As theStrickland court noted, it is always easy in hindsight to criticize the strategic decisions of an attorney whose client has been convicted.Strickland at 689. Thus, we strongly presume that, `under the circumstances, the challenged action might be considered sound trial strategy.' State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965, 977." State v. Singer (July 31, 2000), Ross App. No. 99CA2845, unreported, 2000 Ohio App. LEXIS 3518; see, also, State v.Edgington (Dec. 11, 1996), Ross App. No. 95CA2151, unreported, 1996 Ohio App. LEXIS 5697, quoting State v. Rubenstein (1987), 40 Ohio App.3d 57,64, 531 NE.2d 732, 740.
 {¶ 42} Although other attorneys may have suggested or done otherwise, we decline to second-guess trial counsel's decision to allow his client to stand trial in prison garb because this decision has been acknowledged to be a strategic one. See Estelle, Wells, Singer, andEdgington, supra. As such, Appellant has failed to meet the first prong of the Strickland analysis. Thus, there is no need to analyze the issue further. Accordingly, Appellant's fifth assignment of error is overruled.
 SIXTH ASSIGNMENT OF ERROR *Page 26 {¶ 43} In her sixth assignment of error, Appellant contends that she was denied the effective assistance of counsel, claiming that her counsel was ineffective in failing to prevent and cure all of the foregoing error. Appellant incorporates her previous assignments of error, arguing that her trial counsel (1) should have objected to the introduction of the BCI I lab report based upon Confrontation Clause grounds; (2) should have moved for a directed verdict of acquittal on the basis of lack of proof concerning the "controlled" nature of the substance/drug in question; (3) should have requested an instruction on the required proof of the substance/drug's controlled status under Ohio law; and (4) should have dressed Appellant for trial and objected to her being tried in prison clothing.
 {¶ 44} To obtain the reversal of a conviction on grounds of ineffective assistance of counsel, an appellant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense so as to deprive him of a fair trial.Strickland v. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052;State v. Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904. To demonstrate prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. State v. White (1998), 82 Ohio St.3d 16, 23, *Page 27 
693 N.E.2d 772; State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus.
 {¶ 45} Here, we have overruled each of Appellant's foregoing assignments of error, finding no error, plain or otherwise. Thus, Appellant has failed to show that her counsel's performance was so deficient that "it fell below an objective standard of reasonableness[,]" or that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, supra, at 687-688. A failure to make either showing is fatal to Appellant's claim of ineffective assistance of counsel. Accordingly, Appellant's sixth assignment of error is overruled.
 SEVENTH ASSIGNMENT OF ERROR {¶ 46} In her seventh and final assignment of error, Appellant contends that she was prejudiced by cumulative error. Appellant again incorporates each of the foregoing assignments of error, essentially claiming that those alleged error resulted in cumulative error, which deprived her of a fair trial. Before we consider whether "cumulative errors" are present, we must first find that the trial court committed multiple errors. State v. Goff (1998), 82 Ohio St.3d 123, 140,694 N.E.2d 916. Because we have failed to find any error occurring at the trial court level, the cumulative error principle *Page 28 
is inapplicable. Accordingly, Appellant's seventh assignment of error is overruled. Having overruled all of Appellant's assignments of error, we affirm the trial court's decision.
 JUDGMENT AFFIRMED. *Page 29 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J.: Concurs in Judgment and Opinion. Harsha, J.: Not Participating.
[1] Officer Hill testified that he observed the bag of crack cocaine under Appellant's left thigh as she began to get up to move. Officer Cox testified that he observed the bag of crack cocaine under Appellant's right thigh as she began to get up to move. Appellant argues that this discrepancy is an indication of confusion by the officers regarding the events that day; however, both officers testified that Appellant was sitting Indian style, with her legs crossed on the floor and that they observed the bag of cocaine under her thigh as she began to stand up. Considering that the officers were observing Appellant from different angles and from different parts of the room and that Appellant was sitting with her legs crossed, we do not believe that this discrepancy represents any sort of flaw in the officers' testimony or the State's case.
[2] In State v. O'Connor, the appellant was also represented by Appellant's counsel herein and was charged with drug trafficking. O'Connor raised assignments of error nearly identical to Appellant's assigned errors herein, all of which were rejected by the Twelfth District Court of Appeals. Thus, we rely on the reasoning of the Twelfth District for much of our opinion.
[3] The O'Connor court noted that in Smith, the Third Appellate District held that a laboratory report on the composition of a substance seized from a crime scene at which defendant was arrested constituted "testimonial" evidence under Crawford v. Washington (2004), 541 U.S. 36,124 S.Ct. 1354 and, therefore, the defendant had a right to confront the laboratory technician who "testifie [d]" through the report." Smith,2006-Ohio-1661 at ¶ 17, 26. The Smith further held that to obtain a valid waiver of a defendant's confrontation rights, the prosecution had to go beyond the minimal demand requirements outlined in R.C. 2925.51(D), and "fully notify the defendant of the effect of his failing to make a demand, which * * * includes informing the defendant that the report will be used as prima facie evidence against him as specified in the statute." Id. at ¶ 26. The Smith court concluded that "the prosecution in th[at] case did not provide proper notification sufficient to obtain a knowing, intelligent, and voluntary waiver from [the defendant] of his constitutional right to confront the laboratory technicians, and therefore the laboratory report could not be submitted as evidence at trial." Id. at ¶ 27.
[4] In support of its decision, the Crager court relied on State v.Craig, 110 Ohio St.3d 306, 2006-Ohio-4571, which held that autopsy reports were business records and therefore were not testimonial evidence under Crawford. Id. at ¶ 51, 68. *Page 1