[Cite as *State v. Kuntz*, 2024-Ohio-1680.]

Released: 4/26/24

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 :     Case No. 23CA11
v.                                      :
                                        :     <u>DECISION AND</u>
CHAD KUNTZ,                             :     <u>JUDGMENT ENTRY</u>
                                        :
    Defendant-Appellant.                :
_____

APPEARANCES:

Timothy Young, Ohio Public Defender, and Peter Galyardt, Assistant Ohio Public Defender, Columbus, Ohio, for Appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, and Pamela C. Wells, Ross County Assisting Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Appellant, Chad Kuntz, appeals the judgment of the Ross County Court of Common Pleas convicting him of murder, a special felony in violation of R.C. 2903.02; felonious assault, a second-degree felony in violation of R.C. 2903.11; and reckless homicide, a third-degree felony in violation of R.C. 2903.041. The record reflects that Kuntz was originally indicted on two felony counts and then was subsequently indicted under the same case number on four additional and different felony counts. He was tried before a jury on only the four counts contained in the second indictment and was ultimately convicted of three of

the counts, with the other count being dismissed.[1]  On appeal, Kuntz raises four

assignments of error contending that:  1) he received constitutionally ineffective

assistance of counsel; 2) his felony murder conviction and felonious assault finding

of guilt are not supported by sufficient evidence and the trial court erred when it

denied his Crim.R. 29 motion as to those charges; 3) his felony murder conviction

and felonious assault finding of guilt are not supported by the manifest weight of

the evidence; and 4) his felony murder conviction is unconstitutional.  Because we

find no merit to any of the assignments of error raised by Kuntz, they are all

overruled and the judgment of the trial court is affirmed.

FACTS

{¶2}  On May 7, 2021, a secret indictment was filed charging Kuntz with

two felony counts as follows:

| | |
|---|---|
| Count One: | Involuntary Manslaughter, in violation of R.C. 2903.04, a felony of the first degree (alleging that he caused the death of another by committing or attempting to commit felonious assault); |
| Count Two: | Involuntary Manslaughter, in violation of R.C. 2903.04, a felony of the first degree (alleging that he caused the death of another by committing or attempting to commit aggravated assault). |

---

[1]Kuntz filed a first, direct appeal of his convictions on October 29, 2021, however, we determined that the order being appealed from was not a final order because the two counts contained in the first indictment remained pending.  *State v. Kuntz*, 4th Dist. Ross No. 21CA3759, 2023-Ohio-669.  As a result, the appeal was dismissed and the trial court thereafter issued a final order.  The matter has now been returned to this Court and has been submitted on the briefs filed in the first appeal, with the second appeal having been consolidated with the first appeal.

Kuntz was arrested on those charges, arraigned, appointed counsel, and bond was set at $500,000.00 cash, surety, or real estate. The charges stemmed from events that occurred the night of April 14, 2021 at America's Best Value Inn in Chillicothe, Ohio. After briefly checking into a room at the motel with his girlfriend, Gloria Speakman, the victim herein, and her minor daughter, L.L., Kuntz and Speakman began arguing. The argument continued from the room to the motel office, and finally into the motel parking lot. It culminated with Kuntz throwing a knife in the direction of Speakman's moving vehicle. The knife penetrated the side of Speakman's head, causing her to crash her vehicle in front of a nearby Wendy's and gas station. When the vehicle came to a rest, both L.L. and Kuntz found the knife lodged in Speakman's skull. Speakman was treated at the scene and was later transferred to a hospital in Columbus, Ohio, where she later died.

{¶3} Subsequently, and based upon the same conduct that formed the basis of the May 7, 2021 indictment, a second indictment was filed on June 4, 2021 under the same case number, charging Kuntz with four additional felony counts as follows:

Count One: Murder, a special felony in violation of R.C. 2903.02;

Count Two: Felonious assault, in violation of R.C. 2903.11, a felony of the second degree;

Count     Involuntary manslaughter, in violation of R.C. 2903.04, a felony of the
Three:    third degree (alleging that he caused the death of another by committing or
          attempting to commit criminal damaging or endangering);

Count     Reckless homicide, in violation of R.C. 2903.041, a felony of the third
Four:     degree.[2]

Kuntz was again arraigned and pled not guilty to the charges, the same counsel was

appointed, and his bond was continued. A bill of particulars was later filed which

only addressed the four counts contained in the second indictment. Thereafter, the

matter proceeded to a jury trial on September 28, 2021.

{¶4} After the jury was seated, the trial court orally dismissed the two first-

degree felony counts of involuntary manslaughter contained in the initial

indictment filed May 7, 2021, and stated that the matter would proceed on the

superseding indictment. However, despite orally dismissing the two counts of

involuntary manslaughter contained in the first indictment, the trial court failed to

issue a written entry formally dismissing the two counts. The matter thereafter

proceeded to trial on only the four counts contained in the second indictment.

{¶5} At the close of the State's case, defense counsel moved the court to

acquit Kuntz on all charges pursuant to Crim.R. 29(A). The motion was denied

except as to the third-degree involuntary manslaughter count. Kuntz was

ultimately convicted of murder, felonious assault, and reckless homicide as

---

[2] Counts One and Two also contained repeat violent offender specifications.

charged in the second indictment. The trial court issued a judgment entry on October 4, 2021, which dismissed the third-degree involuntary manslaughter count contained in the second indictment, but which did not address the oral dismissal of the two first-degree involuntary manslaughter counts contained in the first indictment. The trial court thereafter issued a judgment entry of sentence on October 20, 2021 and Kuntz filed a first, direct appeal from that judgment. However, finding that the trial court failed to dispose of the two counts contained in the first indictment, we determined that there was no final appealable order and we dismissed the appeal. *See State v. Kuntz*, 4th Dist. Ross No. 21CA3759, 2023-Ohio-669, ¶ 1.

{¶6} Thereafter, the trial court issued a final order and the matter was submitted to this Court on the briefs from the prior appeal. The jury trial transcript indicates that the State presented several witnesses at trial and Kuntz rested his case without presenting any witnesses on his behalf. The witnesses presented by the State included Jeremiah Sheets, the night shift manager at America's Best Value Inn, Chillicothe Police Patrolman Shane Simmons; Chillicothe Police Patrolman William Anderson; Chillicothe Police Officer Blair Strange; Detective Chris Fyffe, of the Chillicothe Police Department; Chillicothe Police Officer Morgan Music; Franklin County Chief Deputy Coroner Kevin Jenkins; David Loomis, Senior Forensic Audio Video Analyst with the Ohio Organized Crime

Investigation Commission; Detective Jeffrey Demint, of the Chillicothe Police Department; and the victim's minor daughter, L.L.

{¶7} Both Sheets and L.L. testified regarding the events on the evening leading up to the commission of the crimes. Sheets testified that Kuntz and his party checked into the motel with some difficulty, having to use Speakman's ID because Kuntz's ID was expired and because Speakman had apparently stayed at the motel previously. When Kuntz was informed Speakman had stayed at the motel on two previous occasions, an argument ensued. L.L. described Kuntz as acting "very mean" and having "an attitude" once they got into their room. She testified Kuntz and her mother began arguing, which led her and her mother to pack up their things and put them back into the car to prepare to leave. Sheets testified that during this time a noise complaint was received related to Kuntz's room and Sheets had to call and tell them to quiet down or they would be asked to leave. Between Sheets' and L.L.'s testimony, it appears that Speakman and L.L. drove back to the motel office and Kuntz walked to the office to ask for information about Speakman's prior stays at the motel. When Sheets advised he could not print off the information requested, Kuntz and Speakman exited the office and the argument continued into the parking lot, with Kuntz walking alongside Speakman's moving vehicle and continuing to argue with her while L.L. was sitting in the front passenger seat.

{¶8} At that point, Speakman made a sudden maneuver to turn the car around and head out of the parking lot. L.L. testified that her mother began driving very fast and then crashed the car into an area by Wendy's and a gas station across the street from the motel parking lot. When the vehicle came to a rest, Speakman was lying in L.L.'s lap with a knife sticking out of her head. Kuntz came running to the vehicle at that time and attended to Speakman while L.L. called 911.

{¶9} Patrolmen Simmons and Anderson and Officers Strange and Music were all dispatched to the scene of the crash. Patrolman Simmons testified that when he arrived at the scene the victim was being loaded into an ambulance. He further testified that he was contacted by the owner of the motel and was informed there was surveillance video of the incident that occurred in the parking lot. As such, he went to the motel to watch the video. The video was played for the jury during his testimony. He testified that the video depicted Kuntz throwing something at the vehicle and then chasing down the vehicle. Patrolman Simmons testified that when he arrived at the scene, he walked around the vehicle and found two knives in the grassy area near the driver's side.

{¶10} Officer Strange testified that when he arrived at the scene, Kuntz appeared panicked and "very excitable." He testified that Kuntz was crying and upset, claiming that Speakman left the motel and as he was turning to go back into the room, he heard a crash and ran toward it. Strange further testified that Kuntz

informed him that when he arrived at the vehicle, he found a knife in Speakman's head, which he removed and threw on the ground. Officer Music testified that he was the first to arrive at the scene, after the EMS. He testified that when he learned there was a knife of evidentiary value, he collected it and photographed it. He testified he also found a second knife and a set of scales at the scene.

{¶11} Detective Chris Fyffe went to Grant Hospital at Detective Demint's request to follow up on the victim. He testified that he took photos of the victim's wounds, which included injuries to the temple area of her skull, and which had been stapled shut. Kevin Jenkins, the Chief Deputy Coroner at the Franklin County Forensic Center, testified that he performed the autopsy on Speakman and that he determined her cause of death was a "penetrating sharp force injury of the head," which he explained was consistent with the knife penetrating her skull. He further testified that the victim's death was ruled a homicide. David Loomis, a Senior Forensic Audio Video Analyst from the Ohio Organized Crime Investigation Commission also testified. He explained that although he attempted to clarify the surveillance video of the parking lot, due to the quality of the video he was unable to determine if the object thrown by Kuntz was a knife, or if the knife was open or closed. Nor was he able to track it through the air.

{¶12} Finally, Detective Demint, who was the lead investigator on behalf of the Chillicothe Police Department, testified. He testified that he interviewed Kuntz

on two different occasions after the incident. Video recordings of both of the interviews were played for the jury. Demint testified that during the first interview, Kuntz told him that Speakman sped off as he was walking back to the motel room and that he took off running towards her car when he heard a crash. Demint testified that Kuntz admitted to throwing his hands up in the air, but denied throwing anything towards Speakman's car. Demint further testified that Kuntz stated he had no idea how a knife got into Speakman's head. Kuntz also informed Demint he had been smoking marijuana all day long and had smoked meth a few hours prior to the incident.

{¶13} Demint testified that during the second interview, which was conducted about 48 hours later, Kuntz was confronted with the surveillance video and still shots of him making a throwing action. Kuntz, however, continued to deny throwing anything. It was not until Detective Demint showed Kuntz a photo of Speakman taken in the hospital that Kuntz admitted that he threw a knife. Kuntz claimed that it was an accident and that the knife was closed when he threw it. Demint further testified that because Kuntz had essentially been lying to him the whole time he wanted to take closer look at the knife in question in order to determine how hard it was to open the knife. Demint testified that he tried to make the same throwing motion depicted in the surveillance video to see if the knife would open up accidentally but it did not. He determined the only way the knife

would open was either by using both hands, or by pushing the "open-assist" button with either his thumb or forefinger. Video recordings of Demint's investigation of the knife, as well as his attempts to open the knife by throwing it, were played for the jury. The defense objected to Demint's testimony on this subject, however, it was agreed that the State would not represent Demint as an expert or reference his demonstration as any sort of "test." Further, a limiting instruction was provided to the jury to that effect.

{¶14} Thereafter, the State's case was concluded and Kuntz's trial counsel made a Crim.R. 29(A) motion for acquittal as to all charges. As set forth above, the motion was denied by the trial court, except as to count three, involuntary manslaughter, which the trial court dismissed. Kuntz was ultimately convicted of felony murder, felonious assault, and reckless homicide. The felonious assault and reckless homicide charges were merged with the felony murder charge for purposes of sentencing. The trial court sentenced Kuntz to 15 years to life, with an additional 10 years for the repeat violent offender specification. Thus, Kuntz received a sentence of life in prison with parole eligibility after 25 years. Kuntz now appeals, setting forth four assignments of error for our review.

ASSIGNMENTS OF ERROR

I.     CHAD KUNTZ RECEIVED CONSTITUTIONALLY
       INEFFECTIVE ASSISTANCE OF COUNSEL.

II.     CHAD KUNTZ'S FELONY MURDER CONVICTION AND FELONIOUS ASSAULT FINDING OF GUILT ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND THE TRIAL COURT ERRED WHEN IT DENIED HIS CRIM.R. 29 MOTION AS TO THOSE CHARGES.

III.    CHAD KUNTZ'S FELONY MURDER CONVICTION AND FELONIOUS ASSAULT FINDING OF GUILT ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

IV.    CHAD KUNTZ'S FELONY MURDER CONVICTION IS UNCONSTITUTIONAL.

ASSIGNMENTS OF ERROR II AND III

{¶15} For ease of analysis, we address Kuntz's second and third assignments of error out of order and in conjunction with one another. In his second assignment of error, Kuntz contends that his felony murder conviction and felonious assault finding of guilt are not supported by sufficient evidence and the trial court erred when it denied his Crim.R. 29 motion as to those charges. In his third assignment of error, he contends that his felony murder conviction and felonious assault finding of guilt were against the manifest weight of the evidence. The State counters by arguing that not only were Kuntz's convictions supported by sufficient evidence, there was overwhelming evidence of his guilt. To that end, the State contends that the convictions were not against the manifest weight of the evidence.

Standard of Review

{¶16} A Crim.R. 29(A) motion may be sustained " 'if the evidence is insufficient to sustain a conviction of such offense[.]' " *State v. Johnson*, 4th Dist. Ross No. 14CA3459, 2016-Ohio-867, ¶ 9; quoting Crim.R. 29(A). "By its terms, the rule employs the same standard of review as used in a sufficiency of the evidence argument." *Id.*, citing *State v. Miley*, 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist.1996); *State v. Fox*, 4th Dist. Washington No. 14CA36, 2015-Ohio-3892, ¶ 29. "In reviewing the trial court's decision on a Crim.R. 29(A) motion, we conduct a de novo review and will not reverse unless clearly contrary to law." *Johnson* at ¶ 10, citing *State v. Umphries*, 4th Dist. Ross No. 02CA2662, 2003-Ohio-599, ¶ 6 and *State v. Allen*, 4th Dist. Jackson No. 00CA24, 2002 WL 853461 (Feb. 27, 2002). As explained below under the standard of review when considering a sufficiency of the evidence argument, we afford no deference to the trial court under this standard and instead conduct our own independent review of the evidence.

{¶17} A claim of insufficient evidence invokes a due process concern and raises a question of whether the evidence is legally sufficient to support the verdict as a matter of law. *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* "Therefore, our review is de novo." *State v. Groce*, 163

Ohio St.3d 387, 2020-Ohio-6671, 170 N.E.3d 813, ¶ 7, citing *In re J.V.*, 134 Ohio

St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 3.

{¶18} When reviewing the sufficiency of the evidence, our inquiry focuses

primarily upon the adequacy of the evidence; that is, whether the evidence, if

believed, reasonably could support a finding of guilt beyond a reasonable doubt.

*Thompkins* at syllabus. The standard of review is whether, after viewing the

probative evidence and inferences reasonably drawn therefrom in the light most

favorable to the prosecution, any rational trier of fact could have found all the

essential elements of the offense proven beyond a reasonable doubt. *See Jackson*

*v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v.*

*Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). Furthermore, a reviewing

court is not to assess "whether the state's evidence is to be believed, but whether, if

believed, the evidence against a defendant would support a conviction."

*Thompkins* at 390 (Cook, J., concurring).

{¶19} Thus, when reviewing a sufficiency-of-the-evidence claim, an

appellate court must construe the evidence in a light most favorable to the

prosecution. *See State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996);

*State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). A reviewing court

will not overturn a conviction on a sufficiency-of-the-evidence claim unless

reasonable minds could not reach the conclusion that the trier of fact did. *State v.*

*Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶20}  However, when an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence and all reasonable inferences, and consider the witness credibility.  *See State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 151; citing *State v. Thompkins*, *supra*, at 387.  A reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *See State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.  " ' "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." ' " *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Konya*, 2nd Dist. Montgomery No. 21434, 2006-Ohio-6312, ¶ 6, in turn quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997).

{¶21}  As the Court explained in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517:

" '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts.

* * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' "

*Eastley, supra* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273, FN. 3 (1984), in turn quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, 191-192 (1978).

Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder as long as a rational basis exists in the record for its decision. *See State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24; *see also State v. Howard*, 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight").

{¶22} Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). *See also Thompkins, supra*, at 387. If the prosecution presented substantial

credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *See State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus, superseded by state constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997); *see also Eastley* at ¶ 12 and *Thompkins* at 387 (explaining that a judgment is not against the manifest weight of the evidence when "the greater amount of credible evidence" supports it). Thus, " '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.' " *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 17 (4th Dist.), quoting *State v. Mason*, 9th Dist. Summit No. 21397, 2003-Ohio-5785, ¶ 17. Instead, a reviewing court should find a conviction against the manifest weight of the evidence only in the " ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000), quoting *Thompkins* at 387, in turn quoting *Martin* at 175.

Legal Analysis

{¶23} The record before us indicates that Kuntz was convicted of felony murder and felonious assault, as charged in the indictment.  R.C. 2903.02 states in section (B), in reference to the offense of felony murder, as follows:

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

The jury also found Kuntz guilty of reckless homicide in violation of R.C. 2903.041, however, he does not challenge that guilty finding on appeal.

{¶24} The Supreme Court of Ohio has held that the culpable mental state required to support a conviction under R.C. 2903.02(B) is the same one necessary to support a conviction for the underlying felony offense of violence.  *State v. Miller*, 96 Ohio St.3d 384, 2002-Ohio-4931, 775 N.E.2d 498, ¶ 31-34.  In this case, the underlying felony offense of violence was felonious assault, as charged in Count Two of the indictment.  R.C. 2903.11 defines the offense of felonious assault and provides in section (A)(1) that "[n]o person shall knowingly * * * cause serious physical harm to another * * *."  Further, R.C. 2901.22(B) provides as follows regarding the mental state of "knowingly":

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶25} With respect to his sufficiency argument, Kuntz argues that "he genuinely believed he was throwing the equivalent of a piece of metal at his girlfriend's moving car." He argues that there is no direct evidence that the blade was out when it left his hand and that it is unable to be determined one way or the other from watching the surveillance video. He argues that what the video does demonstrate is that he could not have opened the blade with both hands, and therefore the open-assist button must have been hit to release the blade. He further argues that because the blade was opened when it struck the victim, it is reasonable to infer that the button was hit to disengage the blade. However, he argues that "it is not reasonable to infer * * * that Mr. Kuntz knowingly hit the button." Kuntz contends that the evidence instead demonstrates that he shifted the knife from his left to his right hand and "flung" it, acting with "heedless indifference to the consequences" and thereby disregarding "a substantial and unjustifiable risk that [his] conduct [was] likely to cause a certain result." He argues that in doing so he committed the offense of reckless homicide but not felonious assault and murder. Finally, Kuntz argues that because he was throwing the knife as "a blunt object" and "not a knife at all in terms of operation," "there is no way" that he should have been aware that his conduct would "probably cause" a knife to wound his girlfriend. He contends his arguments are supported by the victim's daughter's statement indicating that Kuntz would never knowingly try to hurt her mom, as

well as Detective Demint's statement that the video demonstrated that Kuntz had an "oh no moment" when he realized the knife hit the victim. Kuntz argues in his reply brief that "[w]hether the button [on the knife] was hit consciously or inadvertently is the crux of this case."

{¶26} The State responds by pointing out that "the mental state of 'knowingly' does not require the offender to have the specific intent to cause a certain result." The State contends that there is no dispute that Kuntz threw a knife that resulted in the victim's death, and that "the only thing that [Kuntz] can now dispute is what his intent was when he threw the knife[,] noting that "[t]he argument is not if he intended to kill Speakman, the argument is whether he intended to cause her physical harm with a deadly weapon." The States relies on evidence introduced at trial in which Detective Demint demonstrated that he was unable to accidentally or unintentionally dislodge the blade with one hand while throwing the knife. The State also relies on video evidence showing that Kuntz transferred the knife from his left hand to his right hand, thus demonstrating that he had both hands together, at least for a brief second.

{¶27} The State further points to evidence introduced at trial establishing that Kuntz and the victim were having an argument leading up to the incident, that the motel supervisor had to call their room and tell them to quiet down, as well as the fact that evidence was introduced establishing that Kuntz was using drugs just

prior to the incident. The State also relies on the fact that the video shows Kuntz reach back and then throw the knife "as hard as he possibly could." The State contends all of this constitutes circumstantial evidence of Kuntz's intent at the time he threw the knife at the victim. The State also points out that the jury saw and heard Kuntz lie multiple times when he denied throwing the knife, and that "[h]is statements regarding the incident are not credible."

{¶28} Here, Kuntz argues that he did not act with knowledge, but rather, he only acted with "heedless indifference to the consequences" and in disregard of "a substantial and unjustifiable risk that [his] conduct [was] likely to cause a certain result." However, in finding Kuntz guilty of both felonious assault and felony murder, the jury determined that Kuntz acted with knowledge. Previously, the law in Ohio provided that "[c]ircumstantial evidence relied upon to prove an essential element of a crime must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." *State v. Kulig*, 37 Ohio St.2d 157, 309 N.E.2d 897, syllabus. However, that is no longer the state of the law. This Court has observed that the "reasoning of *State v. Kulig*, *supra,* on the issue of the weight to be afforded to circumstantial evidence, was overruled by the Supreme Court of Ohio in *State v. Jenks, supra*." *State v. Rhoads*, 4th Dist. Highland No. 08CA25, 2009-Ohio-4180, ¶ 22.

{¶29} In *Rhoads*, the defendant argued that the State failed to introduce any direct evidence of his mental state and instead relied upon circumstantial evidence only. However, we observed in *Rhoads* as follows with respect to the reasoning of *Jenks*:

[T]he *Jenks* court stated as follows:

"We hold that when the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction. *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, is overruled to the extent it is inconsistent with our decision announced today. All other cases adhering to the *Kulig* rule are hereby disapproved to the extent they conflict with this opinion." *Jenks* at 273, 574 N.E.2d 492.

Further, this Court has previously reasoned that whether the evidence supporting a defendant's conviction is direct or circumstantial does not bear on our determination. *State v. Judy*, Ross App. No. 08CA3013, 2008-Ohio-5551. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Id.*, citing *Jenks* at paragraph one of the syllabus. Thus, we reject Appellant's argument that the State's reliance on strictly circumstantial evidence in support the knowledge elements of the offenses at issue must be subjected to a more stringent standard.

*State v. Rhoads* at ¶ 22.

{¶30} As set forth above, when reviewing whether a conviction is supported by sufficient evidence, it is not this Court's role to question whether the evidence is to be believed, but rather, we must consider whether the evidence, if

believed, reasonably could support a finding of guilt beyond a reasonable doubt.

Furthermore, in our consideration, we must view the evidence in a light most

favorable to the prosecution.  Although we cannot know the mind of another, in

regards to Kuntz's state of mind when he made the decision to throw a knife in the

direction of the victim's moving vehicle, we are mindful that circumstantial

evidence has equal probative value to direct evidence.  *See State v. Jenks*, *supra*, at

paragraph one of the syllabus and *State v. Rhoads, supra*, at ¶ 22.

{¶31}  Here, the jury viewed surveillance video depicting Kuntz reaching

back and throwing an object with great force and effort towards the victim's

moving vehicle.  The jury also viewed a video interview of Kuntz stating that when

he reached the victim's vehicle after it crashed there was a knife sticking out of the

victim's head.  The jury also viewed Kuntz's video admission that he threw a knife

towards the victim's vehicle, but only after watching two separate video interviews

where Kuntz adamantly and repeatedly denied throwing anything, including a

knife.  Even after being confronted with the existence of surveillance video and

still photos, Kuntz continued to deny that he threw anything.  The jury further

viewed video of Kuntz admitting that prior to the incident, he had smoked

marijuana and done meth.

{¶32}  Additionally, the jury heard testimony from the motel clerk and the

victim's daughter regarding the events of the evening leading up to the incident.  In

particular, the motel clerk testified to an argument going on between Kuntz and the victim regarding the number of the victim's motel stays and with whom and on what dates. The clerk also testified that a noise report was made regarding the room Kuntz and the victim were in, necessitating a call telling them to quiet down. The victim's daughter also testified at trial, and although she did state that she didn't think Kuntz would have tried to hurt her mom, she stated that while they were briefly in the motel room Kuntz was being "very mean," had an "attitude," and was arguing with her mom. According to the victim's daughter, that argument continued from the room back to the office and then back out into the parking lot as she and her mother were trying to drive away.

{¶33} Further, the jury heard testimony from Detective Demint related to his examination of the knife that was recovered from the scene. He testified that in examining the knife, although he wanted to give Kuntz the benefit of the doubt, he became convinced that the knife could not be accidentally opened, but rather it required the use of two hands to open it or the pushing of the "open-assist" button. He testified that even trying multiple times to make a throwing action with the knife, he could not get the blade to "accidentally" open without pushing the button. Also, contrary to Kuntz's statement during the video interview that the knife was flimsy, Detective Kuntz testified that the knife did not appear flimsy. The jury also viewed a video of Detective Demint's examination and simulations of throwing the

knife.  Moreover, the jury heard testimony from the coroner stating that the victim's cause of death was the result of a "penetrating sharp force injury to the head."  The record further reveals that Appellant rested below without presenting any witnesses or evidence, or rebutting any of the evidence or testimony offered by the State.

{¶34}  As set forth above, circumstantial evidence has equal probative value to direct evidence and we conclude that here the evidence presented by the State at trial, if believed, could support a finding of guilt beyond a reasonable doubt.  Thus, we cannot conclude that the Kuntz's felony murder and felonious assault convictions were not supported by sufficient evidence or that the trial court erred in denying his Crim.R. 29(A) motion as to those charges.  Further, based upon the record before us, we simply cannot conclude that the jury lost its way or that this case constitutes an exceptional case where the evidence weighs heavily against the conviction.  The jury was in the best position to hear the testimony, observe the witnesses and evidence, and determine their reliability.   Moreover, the jury, " 'sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it.' "  *State v. Reyes-Rosales*, 4th Dist. Adams No. 15CA1010, 2016-Ohio-3338, ¶ 17, quoting *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.  As such, the jury was free to accept the State's evidence and reject Kuntz's statement that he did not intend to hurt Speakman in

deciding whether Kuntz either consciously hit the open-assist button on the knife, or whether he accidentally hit the open-assist button on the knife, or even whether he opened the knife with both hands when he was transferring the knife from one hand to the other.   Thus, "[w]e defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Hess*, 4th Dist. Meigs No. 20CA1, 2012-Ohio-1248, ¶ 16, citing *State v. Reyes-Rosales, supra*, at ¶ 17 and *State v. Koon*, 4th Dist. Hocking No. 15CA17, 2016-Ohio-416, ¶ 18.

{¶35}  Thus, we hold that the jury's determinations that Kuntz was guilty of felony murder and felonious assault were supported by sufficient evidence and were not against the manifest weight of the evidence.  Accordingly, we find no merit to the arguments raised under Kuntz's second and third assignments of error. Therefore, they are overruled.

ASSIGNMENT OF ERROR I

{¶36}  In his first assignment of error, Kuntz contends he received ineffective assistance of counsel.  He contends that the issue presented is whether counsel was constitutionally ineffective for failing to ensure that the trial was free from references to his prior domestic violence conviction.  More specifically, Kuntz argues that his trial counsel was ineffective for failing to ensure that a video

interview reference to a prior domestic violence conviction, which both the State

and defense counsel had agreed would be omitted, was not played for the jury.

The State responds by arguing that because trial counsel objected before the "slight

reference" could be clear to the jury, there was no error, and even if such reference

did result in error, it was inconsequential and did not contribute to the conviction.

Standard of Review

{¶37} To establish constitutionally ineffective assistance of counsel, a

criminal defendant must show:  (1) that his or her counsel's performance was

deficient, and (2) that the deficient performance prejudiced the defense and

deprived him or her of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687,

104 S.Ct. 2052 (1984).  *Accord State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904

(2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).  "In order to

show deficient performance, the defendant must prove that counsel's performance

fell below an objective level of reasonable representation."  *State v. Conway*, 109

Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95.  Further, "[t]o show

prejudice, the defendant must show a reasonable probability that, but for counsel's

errors, the result of the proceeding would have been different."  *Id.*  "Failure to

establish either element is fatal to the claim."  *State v. Jones*, 4th Dist. Scioto No.

06CA3116, 2008-Ohio-968, ¶ 14.

{¶38}  When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689.  Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  *Id*., quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).  " 'A properly licensed attorney is presumed to execute his [or her] duties in an ethical and competent manner.' "  *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, quoting *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).  Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment.  *See State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 61.

{¶39}  "Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated."  *State v. Walters*, 4th Dist. Washington Nos. 13CA33, 13CA36, 2014-Ohio-4966, ¶ 24; *State v. Jones*, 2018-Ohio-239, 104 N.E.3d 34, ¶ 21-24 (4th Dist.).  We have repeatedly recognized that speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim.  *See e.g. State v. Dailey*,

4th Dist. Adams No. 18CA1059, 2018-Ohio-4315, ¶ 33 and cases cited therein;

*State v. Thacker*, 4th Dist. Lawrence No. 19CA18, 2021-Ohio-2726, ¶ 54-57.

Legal Analysis

{¶40} The record before us indicates that during the State's presentation of the testimony of Detective Demint during its case-in-chief, portions of Demint's video interviews of Kuntz were played for the jury. It is clear from the record that both the State and defense counsel agreed that certain portions of the video should not be played for the jury due to there being some objectionable content. However, while the State was playing the video, it appears from the record that the prosecutor accidentally allowed the video to continue playing beyond the agreed-upon limit. Defense counsel immediately objected and the video was stopped mid-sentence. A discussion took place at the bench where the State and defense counsel agreed the portion of the tape at issue was supposed to have been omitted from the portion played for the jury. The parties further agreed that rather than continuing the playing of the video, it would simply be concluded at that time. The trial then proceeded.

{¶41} Although the video was not transcribed or made part of the trial transcript, this Court has listened to the video in its entirety several times. It appears from the video that after a brief break in the interview, Detective Demint re-entered the interview room and asked Kuntz to stand in order to be

photographed.  While he was photographing him, Demint began to ask him a series

of questions.  The exchange was as follows:

> Detective Demint:  You guys ever fight, physically?  Not tonight,
> but I mean, ever?
>
> Kuntz:                    No.
>
> Detective Demint:  You got a domestic . . . .?

In the course of Demint asking Kuntz if he had a "domestic" on his record, defense

counsel objected when the word "domestic" was said and the video was

immediately stopped before another word could be uttered.

{¶42}  It is clear from a viewing of the video, as a whole, that the reference

to a "domestic" was made in the form of a question, not a statement.  It does not

appear that Detective Demint was commenting on the fact that Kuntz had a prior

domestic violence charge or conviction, rather, he was asking him if he did.  The

word "prior" was not used, nor were the words "violence," "charge," or

"conviction."  And, most importantly, contrary to Kuntz's argument that his "prior

domestic violence conviction was plainly in evidence" as a result of counsel's

failure, the brief use of the word "domestic" was stated as part of an unfinished

question by the detective that remained unanswered because the video was

immediately stopped.

{¶43}  Kuntz argues that allowing any reference to a prior domestic violence

conviction was "damning" and "made it impossible for [the jury] not to consider

propensity evidence[.]" He further argues that "[t]he jury's knowledge of propensity evidence here was an overwhelmingly prejudicial bell that simply could not be unrung." He argues that "counsel's failure was objectively unreasonable" and that he was prejudiced as a result. Moreover, Kuntz argues that cases cited by the State affirming convictions where only brief or inadvertent references to propensity evidence were made are factually and legally distinguishable because they simply "involved statements referencing or alluding to non-specific, past criminal behavior." *See State v. Collins*, 8th Dist. Cuyahoga No. 107020, 2019-Ohio-1239, ¶ 11 (finding reference to defendant having previously been in jail was inadvertent and unsolicited and was not introduced to show the defendant acted in conformity with prior bad conduct); *State v. Payne*, 8th Dist. Cuyahoga No. 105965, 2018-Ohio-1399, ¶ 20 (upholding conviction despite detective's reference to the defendant's "past criminal history," which the court determined was brief and did not reference a specific crime, and where there was ample evidence to convict the defendant); *State v. Southam*, 3rd Dist. Henry No. 07-12-04, 2012-Ohio-5943 (upholding denial of motion for mistrial despite officer's statement that the defendant "ended up having a couple of warrants," finding that the statement was brief, was not dwelt upon, and the objection to the admission of the statement was sustained).

{¶44} Initially, we note that defense counsel was not in possession of or controlling the playing of the video. Additionally, the State does not dispute that there was an agreement that this portion of the video was not to be played for the jury. It appears from a review of the record that this was simply an accident on the part of the prosecutor that was immediately objected to by defense counsel. As set forth above, the reference to the word "domestic" was brief and did not also include the words "charge" or "conviction" or "prior." Moreover, the word was utilized in the form of a question, not a statement.

{¶45} While we acknowledge that Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith[,]" in our view, admission of such evidence did not occur here. Under these particular circumstances we disagree with Kuntz's characterization of the misstep that occurred as a bell that could not be un-rung, the occurrence of which was so damning that it changed the outcome of the trial. Rather, we conclude the error is more properly characterized, as the State argues, as an "isolated reference" that was "brief" and "inadvertent." Rather than a bell that could not be un-rung, in our view it was a bell the string for which started to be pulled, but was abruptly released. The bell itself did not ring. As such, and based upon the foregoing, Kuntz's argument that his counsel's

performance was deficient is not well-taken. Even if we accept that it was deficient, Kuntz has not demonstrated that he was prejudiced as a result.

{¶46} Kuntz's argument appears to be limited to arguing that defense counsel simply should not have allowed the portion of the tape at issue to be played. He does not argue that defense counsel's performance was deficient as to his handling of the matter once the error occurred. Further, even if Kuntz did argue that defense counsel should have requested the portion played in error be stricken from the record, or that the trial court issue a curative instruction or declare a mistrial, such decisions typically fall within the ambit of trial strategy and generally, a defendant has no constitutional right to determine trial tactics and strategy of counsel. *See State v. Groves*, 4th Dist. Scioto No. 20CA3904, 2022-Ohio-443, ¶ 58; *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298 (1999); *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150. Moreover, although defense counsel very promptly and appropriately objected to the continued playing of the interview beyond the limits agreed, continuing the objection, requesting that the portion be stricken, or that the court instruct the jury accordingly, likely would have served to draw more attention to what was otherwise a very brief and incomplete reference to inadmissible evidence. Again, such decisions typically fall within the ambit of trial strategy.

{¶47} "[I]t is well-established that '[c]ompetent counsel may reasonably hesitate to object [to errors] in the jury's presence because objections may be considered bothersome by the jury and may tend to interrupt the flow of a trial.' " *State v. Miku*, 2018-Ohio-1584, 111 N.E.3d 558, ¶ 65 (5th Dist.), quoting *State v. Rogers*, 9th Dist. Summit No. 19176, 1999 WL 239100, citing *State v. Campbell*, 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994).  Furthermore, " ' " '[a] competent trial attorney might well eschew objecting * * * in order to minimize jury attention to the damaging material.' " ' " *State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, ¶ 70, quoting *State v. Topping*, 4th Dist. No. 11CA6, 2012-Ohio-5617, ¶ 80, quoting *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 90, in turn quoting *United States v. Payne*, 741 F.2d 887, 891 (7th Cir. 1984).

{¶48} Furthermore, as was discussed above related to our analysis of Kuntz's second and third assignments of error, Kuntz's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Factoring largely into Kuntz's convictions was Kuntz's eventual admission that he threw a knife at the victim's moving vehicle, coupled with the surveillance video that demonstrates him throwing an object with great effort and force towards the victim's moving vehicle.  Added to this evidence was Kuntz's admission that when he reached the victim, there was a knife sticking out of the side of her head, as well

as testimony from the coroner that the victim's cause of death was from a penetrating, sharp force injury to the head. Thus, we cannot conclude that Kuntz has demonstrated a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.

{¶49} Accordingly, Kuntz's argument that he received ineffective assistance of counsel is without merit and it is therefore overruled.

ASSIGNMENT OF ERROR IV

{¶50} In his fourth and final assignment of error, Kuntz contends that his felony murder conviction is unconstitutional. More specifically, he argues that "Ohio's endorsement of felonious assault as a predicate for felony murder is unconstitutional." Thus, Kuntz essentially urges this Court to adopt the independent felony/merger doctrine. Kuntz concedes that this argument has been rejected by multiple other appellate districts in Ohio.

{¶51} Moreover, as noted by the State, a review of the record reveals that Kuntz failed to raise this argument at the trial court level. The Supreme Court of Ohio has explained that:

> the question of the constitutionality of a statute must generally be raised at the first opportunity and, in a criminal prosecution, this means in the trial court. *See State v. Woodards* (1966), 6 Ohio St.2d 14, 215 N.E.2d 568 [35 O.O.2d 8]. This rule applies both to appellant's claim that the statute is unconstitutionally vague on its face and to his claim that the trial court interpreted the statute in such a way as to render the statute

> unconstitutionally vague.  Both claims were apparent but yet not
> made at the trial court level.

*State v. Awan*, 22 Ohio St.3d 120, 122-123, 489 N.E.2d 277 (1986).

Because Kuntz's constitutional challenge could have been raised at the trial court level but was not, we decline to address it for the first time on appeal.  Although this Court has discretion to address plain errors, Kuntz has not argued plain error and this Court will not construct a plain error argument for him.  *See State v. White*, 4th Dist. Adams No. 18CA1080, 2019-Ohio-4288, ¶ 18, citing *State v. Steers*, 4th Dist. Washington No. 11CA33, 2013-Ohio-3266, ¶ 20.  *See also State v. Fleckenstein*, 9th Dist. Lorain No. 22CA011886, 2023-Ohio-4347, ¶ 33, citing *State v. McCraw*, 9th Dist. Medina No. 14A0009-M, 2015-Ohio-3809, ¶ 5.  Therefore, Kuntz's fourth assignment of error is overruled.

{¶52}  Accordingly, having found no merit in any of the assignments of error raised by Kuntz on appeal, all of his assignments of error are overruled and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**